STATE, Plaintiff v. STRICKLAND, Defendant and Appellant

STATE, Plaintiff v. PICKETT, Defendant and Appellant

(211 N.W.2d 575)

(File Nos. 11143, 11160. Opinion filed October 24, 1973)

Dana, Golden, Moore & Rasmussen and **Richard W. Sabers**, Sioux Falls, for appellant, Rex V. Strickland.

Gordon Mydland, Atty. Gen., **Walter W. Andre, Julian Brown, John Storsteen**, Asst. Attys. Gen., **Frances M. Niemoller**, Asst. Atty. Gen., Pierre (on the brief), for respondent in No. 11143.

Gordon Mydland, Atty. Gen., **Michael McGreevy**, Asst. Atty. Gen. (on the brief), **Julian Brown, John Storsteen**, Asst. Attys. Gen., Pierre, for respondent in No. 11160.

**Robert L. O'Connor**, Sioux Falls, for appellant Robert Lee Pickett.

WOLLMAN, Justice.

Defendants were convicted after a joint jury trial of having conjointly committed the offense of robbery in the first degree. Defendants were sentenced to serve twenty years in the South Dakota State Penitentiary and they appeal.

Shortly after 7 p.m., Saturday, December 18, 1971, two men entered Alick's Grocery, located at 1301 West 18th, Sioux Falls, South Dakota. One of these men, later identified as defendant Strickland, approached an employee standing at the cash register, pointed a gun at her, informed her that, "This is a stickup," and directed her to open the cash register. The other man, later identified as defendant Pickett, stood near a counter some four or five feet away. The employee opened the cash register, whereupon defendant Strickland grabbed the bills and checks from the till and he and defendant Pickett left the store. While the robbery was being carried out a young girl who had observed the defendants' actions ran to the adjoining drug store in the same building and informed an employee there about the robbery. The robbery was also witnessed by another customer, Mrs. Hutchinson, who saw defendant Strickland point the gun at the cashier and later stuff the money into his pocket, whereupon Mrs. Hutchinson attempted to leave the grocery store quietly and go to the pharmacy to get help. As she was attempting to do this, defendant Pickett came over and pushed her against some pop cases. After Mrs. Hutchinson regained her feet she went over to the pharmacy and told Mr. Sam Alick, the co-owner of the grocery store and drug store, about the robbery. Mr. Alick ran to the door that separated the two stores and saw defendant Strickland, whom he described as wearing a brown corduroy type jacket and a hat, backing out of the front door of the grocery store. Mr. Alick ran to the back door of the drug store and saw defendant Strickland getting into an older Chevrolet, blue in color, bearing Iowa license plates with the prefix numbers "77-". Mr. Alick observed the automobile leave the area and drive south on Grange Avenue, whereupon he returned to the pharmacy and called the police.

At approximately 7:15 that evening the Sioux Falls police department put out a radio report stating that there had been an armed robbery at Alick's Grocery and that two suspects, one wearing a brown coat and a dark colored hat, had left the scene in an older model Chevrolet, blue with white top, bearing 1971 Iowa license plates, prefix number "77-." In response to this radio report, officers James Jones and Bill Hanson of the South Dakota Highway Patrol proceeded to the intersection of 41st Street and

Interstate Highway 29, where they parked their car at the top of the access ramp leading from 41st Street to the northbound lane of Interstate 29 and observed the passing traffic. Two or three minutes later the two officers observed a 1961 blue and white Chevrolet automobile bearing Iowa license plates prefix "77-" come from the east on 41st Street and turn north onto the Interstate highway. There were two persons in this automobile; the passenger was wearing a brown coat and what one of the officers described as "a little hat." The two officers immediately followed the Chevrolet automobile, the driver of which stopped the car approximately one-half mile north of the intersection in response to the red light on the patrol car. After stopping his patrol car behind the Chevrolet, Patrolman Jones walked to the front fender of the Chevrolet and asked the two occupants to step out of the automobile. The driver of the Chevrolet, identified as defendant Pickett, got out of the car immediately in response to the officer's command. The passenger, defendant Strickland, got out later in response to further commands by the officers. Both defendants were then ordered to put their hands on the front top of the Chevrolet, whereupon officer Jones checked defendant Pickett for weapons by patting him down. Upon finding no weapon, Patrolman Jones ordered defendant Pickett·to the rear of the car where Patrolman Hanson had stationed himself in response to directions from Patrolman Jones. Patrolman Jones then went around to the passenger side of the Chevrolet and began patting down defendant Strickland for weapons. While he was doing this, Patrolman Jones noticed the handle of a gun protruding from under the front seat and also noticed some checks on the front seat of the automobile. Upon looking at the checks, Patrolman Jones noticed one made out to Alick's Grocery. He then advised the defendants that they were under arrest for armed robbery and asked the other officers who had arrived on the scene to advise the defendants of their Miranda rights. Patrolman Jones then picked up the checks, which were made payable or endorsed to Alick's Grocery and most of which were dated December 18, 1971, and the weapon, which was loaded with five bullets, together with some $200 cash that was with the checks on the front seat.

Defendants contend that the trial court erred in admitting into evidence the weapon, checks and money that Patrolman

Jones discovered in the front seat of the Chevrolet automobile at the time he was checking defendant Strickland for weapons. We hold that the seizure of these items was entirely proper and that the court did not err in admitting them.

■ Based upon the information they had received in the radio report from the Sioux Falls police department, officers Jones and Hanson had probable cause to arrest the defendants. Klingler v. United States, 8 Cir., 409 F.2d 299; State v. Klingler, 84 S.D. 466, 173 N.W.2d 275; State v. Glick, 87 S.D. 1, 201 N.W.2d 867. They also had probable cause to believe that the Chevrolet automobile contained instruments or fruits of the crime; thus they were entitled to search the car on the spot and to remove the evidence in question. Chambers v. Maroney, 399 U.S. 42, 90 S.Ct. 1975, 26 L.Ed.2d 419; Orricer v. Erickson, 8 Cir., 471 F.2d 1204. See also Cady v. Dombroski, 413 U.S. 433, 93 S.Ct. 2523, 37 L.Ed.2d 706.[1]

Moreover, the gun, checks and money were within plain view of Patrolman Jones, standing as he was in a place where he had the right to be; consequently, he properly seized these items of evidence. Harris v. United States, 390 U.S. 234, 88 S.Ct. 992, 19 L.Ed.2d 1067; Coolidge v. New Hampshire, 403 U.S. 443, 91 S.Ct. 2022, 29 L.Ed.2d 564; State v. Hermandson, 84 S.D. 208, 169 N.W.2d 255; Orricer v. State, 85 S.D. 293, 181 N.W.2d 461.

■ Finally, the seizure of the items can very well be upheld under the rationale of Chimel v. California, 395 U.S. 752, 89 S.Ct. 2034, 23 L.Ed.2d 685. Although defendants contend that they were under the watchful eye of Patrolman Hanson and the other officers at the scene and thus posed no threat to Patrolman Jones' physical safety or the safety of any of the other officers, we think that the area from which Patrolman Jones seized the weapon, checks and money was well within the area of search countenanced by Chimel. When, as in the instant case, suspects meeting the description of those who have recently committed an

---

1. Whiteley v. Warden, 401 U.S. 560, 91 S.Ct. 1031, 28 L.Ed.2d 306, is distinguishable inasmuch as the information upon which the police report was issued in the instant case was obviously adequate to support a finding of probable cause based upon Mr. Alick's report to the police.

armed robbery are apprehended while fleeing in an automobile, the perimeters of the permissible area of search need not be defined with Pythagorean precision. We will not require that the arresting officers in such a situation make nice calculations concerning the length of a suspect's reach.

Defendants contend that the trial court erred in denying their motion for change of venue made pursuant to SDCL 23-28-7. This motion was supported by the affidavit of defendants' attorneys, which stated that the atmosphere in Minnehaha County was so thoroughly charged with prejudice against the defendants as a result of inflammatory news items and articles appearing in the local newspapers and being broadcast over the local radio and television stations that defendants could not receive a fair trial. The record contains three or four newspaper clippings referring to the robbery.[2] One of the articles was a report of defendants' preliminary hearing on the instant charge. Another was a letter to the editor by one of the customers who was in the grocery store at the time of the robbery. A third article consisted of an editorial which appeared in the Sioux Falls Argus Leader on December 21, 1971, complimenting the Sioux Falls police department in particular for the speedy apprehension of the two suspects in the Alick Grocery robbery and in general for the efficient and thorough manner in which the Sioux Falls police force operates. The final article was in the nature of an opinion article in a Sioux Falls weekly newspaper written by a man whose wife arrived at Alick's Grocery shortly after the robbery. This article complimented the work of the police in capturing the "thieves" shortly after the robbery.

With the exception of the use of the word "thieves" in the opinion article in the weekly newspaper, the articles were basically factual in nature. That the defendants were captured shortly after the robbery is incontrovertible; that the law enforcement officers were efficient hardly seems open to debate. Our review of the showing made by defendants leads us to

---

2. Although these clippings were not attached to the affidavit in support of the motion for change of venue nor are they identified by exhibit number, the briefs state that they were submitted in support of the motion and we will treat them as having been so submitted.

conclude that the trial court did not err in denying the motion for change of venue. State v. Olson, 87 S.D. 97, 203 N.W.2d 187; State v. Kingston, 84 S.D. 578, 174 N.W.2d 636; State v. Austin, 84 S.D. 405, 172 N.W.2d 284.

▮ The court did not err in denying defendants' motion for continuance made pursuant to SDCL 23-42-5 and supported by the affidavit of defendants' attorneys, similar in content to the affidavit in support of the motion for change of venue, to the effect that defendants could not get a fair and impartial trial in Minnehaha County because of the prejudicial news coverage of the robbery. State v. Johnson, 76 S.D. 37, 71 N.W.2d 733; State v. O'Connor, 84 S.D. 449, 173 N.W.2d 48.

Defendant Strickland contends that the trial court erred in denying his motion for a separate trial made pursuant to SDCL 23-42-4. In his affidavit in support of this motion, defendant Strickland's attorney argued that the jury would draw unfavorable inferences if defendant Pickett should refuse to testify when called by Strickland, and should defendant Strickland refuse to testify when called by Pickett.

▮ Neither defendant testified on his own behalf at the trial. If neither had anything to say on his own behalf, it is difficult to imagine what they might have said on behalf of each other. In the absence of a more particularized showing as to any possible prejudice, we conclude that the trial court did not abuse its discretion in denying the motion for separate trials.

Finally, defendant Strickland argues that he was prejudiced by the giving of the following instruction on behalf of defendant Pickett at Pickett's request:

"Instruction 22. In this case the law raises no presumption against the defendant, Robert Lee Pickett, but every presumption of the law is in favor of his innocence. He is not required to prove himself innocent, or put in any evidence at all upon that subject. The fact that the defendant, Robert Lee Pickett, has not testified in this case raises no presumption against him, and you

must give no thought to the fact that the defendant, Robert Lee Pickett, did not testify in his own behalf in this case in arriving at your verdict."

Other instructions informed the jury that each defendant was presumed to be innocent and that the burden of proof rested upon the state to prove all the material allegations of the information and each and every material element of the offense charged beyond a reasonable doubt in order to prove the defendants guilty of the offense charged.

■ South Dakota Constitution, Art. VI, § 9 states that "No person shall be compelled in any criminal case to give evidence against himself * * *". It has long been a law in this state that it is reversible error for the prosecution to call to the attention of the jury the failure of the defendant to testify. State v. Brown, 81 S.D. 195, 132 N.W.2d 840; State v. Wolfe,, 64 S.D. 178, 266 N.W. 116. Comment by the prosecution on a defendant's silence or instruction by the court that such silence is evidence of guilt is also violative of a defendant's federal constitutional right. Griffin v. California, 380 U.S. 609, 85 S.Ct. 1229, 14 L.Ed.2d 106.

Instruction 22 is patterned after South Dakota Pattern Jury Instructions, Criminal, 1-17 (alternate form). The comment to this instruction states that it should be used only on request of the defendant.

Many courts have held that it is not reversible error to give an instruction similar to Instruction 22 in the absence of a request by the defendant. See Annot., 18 A.L.R.3d 1335, and cases cited in State v. Kimball, Iowa, 176 N.W.2d 864. Other courts have held that the giving of such a cautionary instruction in the absence of a request by the defendant is reversible error. See e.g., State v. Kimball, supra, and cases cited therein.

■ Even if we assume for the purpose of defendant Strickland's argument that the court erred in giving Instruction 22, such error was harmless beyond a reasonable doubt in view of the overwhelming evidence of Strickland's guilt. Milton v. Wainright, 407 U.S. 371, 92 S.Ct. 2174, 33 L.Ed.2d 1;

Harrington v. California, 395 U.S. 250, 89 S.Ct. 1726, 23 L.Ed.2d 284; Chapman v. California, 386 U.S. 18, 87 S.Ct. 824, 17 L.Ed.2d 705. See Annot., 24 A.L.R.3d 1093.

The convictions are affirmed.

BIEGELMEIER, C. J., WINANS, J., and HERSRUD, Circuit Judge, concur.

HERSRUD, Circuit Judge, sitting for DOYLE, J., absent.

DUNN, J., not participating.