**STATE of South Dakota, Plaintiff
and Appellant,**

v.

**Lawrence F. LUXEM, Ellen E. Wright,
Alfred E. Walters, Defendants
and Appellees.**

**No. 13587.**

Supreme Court of South Dakota.

Argued May 18, 1982.

Decided Sept. 8, 1982.

Gary F. Colwill, Deputy State's Atty., Pierre, for plaintiff and appellant.

Thomas L. Trimble of Sieler, Trimble & Crawford, Rapid City, for defendant and appellee Luxem.

James Robbennolt of Duncan, Olinger, Srstka, Lovald & Robbennolt, P. C., Pierre, for defendant and appellee Wright.

David L. Bergren of Bergren & Duffy, Fort Pierre, for defendant and appellee Walters.

WOLLMAN, Justice.

This is an intermediate appeal by the State from orders granting defendants' motions to suppress evidence. SDCL 23A–32–5(1). We reverse and remand.

While on patrol duty at approximately 5:30 p. m. on July 9, 1981, Hughes County Deputy Sheriff Charles Vollmer observed an automobile in the parking lot of an automobile body repair shop in the city of Pierre. Deputy Vollmer observed that four persons had left the vehicle and that the three males in the group had moved to the front of the vehicle and were attempting to open the hood. Deputy Vollmer drove around the block and came back to the scene inasmuch as he thought that the four might be having some trouble with their vehicle.

As he drove into the north entry of the parking lot, Deputy Vollmer observed that the four persons had re-entered the vehicle and that the vehicle was being backed in a southerly direction. As Deputy Vollmer entered the approach area in his patrol car the other vehicle stopped, whereupon Deputy Vollmer left his car and walked to the passenger side of the stopped vehicle and asked the driver if he and his passengers were having some problems with the vehicle. Defendant Luxem was seated behind the steering wheel and one Alfred Grudniewski was sitting on the passenger side in the front seat. Defendants Wright and Walters were sitting in the rear seat of the vehicle.

In response to Deputy Vollmer's question, Luxem and Mr. Grudniewski indicated that the vehicle was overheating and inquired regarding the closest place to get water for the radiator. Deputy Vollmer then engaged in a conversation with Luxem regarding various places where Luxem could obtain water for the vehicle. Luxem's voice appeared to be slurred and he appeared to be having some difficulty with his speech, whereupon Deputy Vollmer asked Luxem for his driver's license for the purpose of identifying him and ultimately asking him to perform some field sobriety tests.

After Luxem produced a driver's license, Deputy Vollmer asked to see the registration for the vehicle. When Luxem started reaching for the glove box, Walters stated that he thought that the registration was located above Luxem's head. After hesitating momentarily, Luxem continued to reach for the glove box and then rummaged through the glove box before looking to the sun visor above his head. After experiencing some difficulty in pulling the registration holder clip off the sun visor, Luxem handed Deputy Vollmer the entire clip. The vehicle was registered in the name of a woman whom Luxem later identified as his girlfriend.

During his conversation with Deputy Vollmer concerning the ownership of the vehicle, Luxem appeared to have some difficulty comprehending the questions; his voice was slurred, he mumbled somewhat, and his speech was not clear.

After being handed the registration form, Deputy Vollmer asked Luxem to step out of the vehicle. As Luxem complied with this request, he had difficulty with his balance. As Luxem left the vehicle, Deputy Vollmer noticed the butt end of a fold-up type knife protruding from the front left pocket of Luxem's trousers. Concerned that the knife, the blade of which was in the locked-open position, might ultimately be used as a weapon, Deputy Vollmer, who was alone in the area, asked Luxem to put his hands on the vehicle. As Luxem did so, Deputy Vollmer removed the knife from Luxem's pocket and asked Luxem to assume a spread-eagle position with his hands on the top of the automobile. Deputy Vollmer then conducted a pat search of Luxem's body and made a visual inspection of the vehicle for any possible weapons that might be within it. As he did so, Deputy Vollmer observed a paper sack next to the passenger in the front seat. A search of the sack revealed that it contained only beer. Deputy Vollmer then asked Walters if he could

look in the paper sack that was between Walters' legs on the rear floor board of the vehicle. In response to this inquiry, Walters reached down and pushed the open sack away from Deputy Vollmer, folding the top over in the process so that Deputy Vollmer could not see the contents. Deputy Vollmer renewed his request, whereupon Walters picked the sack up from between his knees and moved it away from Deputy Vollmer towards defendant Wright's side of the automobile. Deputy Vollmer then reached into the automobile and grabbed the sack as Walters moved it towards Ms. Wright. Upon opening the sack Deputy Vollmer observed a large plastic bag containing a brownish, leafy substance.

Deputy Vollmer testified that at the time he looked into the interior of the automobile he was concerned for his safety. He testified that it is not a usual occurrence to stop someone and find the person carrying in his pants pocket a fold-up knife with the blade in an unfolded position.

Defendants were subsequently charged with the offense of possession of marijuana in excess of one pound. The motion to suppress made by defendants Walters and Wright was granted by the Honorable John B. Jones; the motion to suppress made by defendant Luxem was granted by the Honorable Robert A. Miller. The cases were consolidated for purposes of this appeal.

■■■ Both Judge Jones and Judge Miller relied upon *Robbins v. California*, 453 U.S. 420, 101 S.Ct. 2841, 69 L.Ed.2d 744 (1981), as the basis for holding that the marijuana found in the paper sack in the rear seat should be suppressed. We disagree. Rather, we conclude that Deputy Vollmer had a reasonable basis for asking Luxem to step out of the vehicle to perform field sobriety tests, given the difficulties that Luxem was having in producing the registration for the vehicle and the difficulty he had in comprehending and responding

to Deputy Vollmer's questions. Once Deputy Vollmer became aware of the open knife in Luxem's pants pocket, his concern for his personal safety constituted sufficient justification for him to make an immediate search of the interior of the automobile for other possible weapons. *Pennsylvania v. Mimms*, 434 U.S. 106, 98 S.Ct. 330, 54 L.Ed.2d 331 (1977); *Adams v. Williams*, 407 U.S. 143, 92 S.Ct. 1921, 32 L.Ed.2d 612 (1972); *Terry v. Ohio*, 392 U.S. 1, 88 S.Ct. 1868, 20 L.Ed.2d 889 (1968). As we said in another case in which officers were searching the occupants of an automobile for possible weapons, "We will not require that the arresting officers in such a situation make nice calculations concerning the length of a suspect's reach." *State v. Strickland*, 87 S.D. 522, 527, 211 N.W.2d 575, 578 (1973). Although Deputy Vollmer had not placed the occupants of the vehicle under arrest before he made the search of the interior of the vehicle for weapons, we do not read *Terry, Adams*, and *Mimms* as requiring an arrest as a condition precedent to a search for weapons to protect the safety of the investigating officer.*

The orders suppressing the evidence are reversed, and the case is remanded to the circuit court for further proceedings.

MORGAN and HENDERSON, JJ., concur specially.

FOSHEIM, C. J., and DUNN, J., dissent.

MORGAN, Justice (concurring specially).

I concur in the result on the basis of the application of the *Terry v. Ohio* decision.[1] I think that the dissent reads *People v. Long*, 413 Mich. 461, 320 N.W.2d 866 (1982), too narrowly. The Michigan Court affirmed the test of *Terry*, to-wit: "To justify the warrantless protective search '... a reasonably prudent man in the circumstances [should] be warranted in the belief that his

---

* Because we are not here concerned with a search for contraband based upon probable cause, the United States Supreme Court's recent decision in *United States v. Ross*, —— U.S. ——, 102 S.Ct. 2157, 72 L.Ed.2d 572 (1982), and our recent decision in *State v. An-*

*derson*, 316 N.W.2d 105 (S.D.1982), are not applicable.

1. *Terry v. Ohio*, 392 U.S. 1, 88 S.Ct. 1868, 20 L.Ed.2d 889 (1968).

safety or that of others was in danger.'" *Long,* 320 N.W.2d at 869 quoting from *Terry v. Ohio,* 392 U.S. 1, 27, 88 S.Ct. 1868, 1883, 20 L.Ed.2d 889, 909. I read *Long* to say that under the circumstances there present *Terry* did not apply. In *Long* there were two officers and only one person in the car. One officer had the driver under control at the rear of the car while the other proceeded with the search. Here, there was only one officer with four persons in the car.

In *State v. Heumiller,* 317 N.W.2d 126 (S.D.1982), we noted that any warrantless search is unconstitutional unless there is a showing that the action was reasonable and based on probable cause and that exigencies of the situation made the course imperative. We further held that the exigent circumstances were to be applied to the facts as perceived by the police at the time of the action, not as subsequently uncovered. Here, the officer had already found one person in the group to be armed; it is hard to conceive that anyone carries a knife in his pocket with the blade open unless he intends to use it in the near future. The officer was alone, away from the main traveled portion of the street. He had not been alerted to the possibility of the presence of marijuana by any smells eminating from the car or the person as often is the case. He was faced with a dangerous situation and in my opinion he acted prudently.

HENDERSON, Justice (specially concurring).

This officer was acting alone and was dealing with four individuals unknown to him, one of whom had an open knife in his pants pocket and two others who were acting in a suspicious manner. Before continuing with his traffic investigation, it was not unreasonable under these circumstances for this officer to take some limited steps to assure his own safety. Factually, it is to be further noted that the automobile was not registered in the name of the driver or any of the occupants thereof. When the officer asked for the registration certificate of the vehicle, defendant Luxem began reaching for the glove compartment when defendant Walters advised that it was above Luxem's head. Luxem hesitated and then continued to reach for the glove compartment and rummage around in the glove compartment before looking to the sun visor above his head. Defendant Luxem eventually pulled a clip from the sun visor and handed it to the officer who determined that none of the occupants owned the vehicle. At this juncture, it would not have been unreasonable for the officer to have some type of conviction that the motor vehicle was possibly stolen. According to the officer, defendant Luxem mumbled, spoke without clarity, and had difficulty with his balance. Additionally, the officer observed a large paper sack partially opened between the legs of defendant Walters (this, after he had taken the knife from defendant Luxem) and thereupon asked defendant Walters to turn the sack so that he, the officer, could see what was inside of it. Instead of complying with the officer's request, defendant Walters said nothing and moved the sack in a quick, furtive manner so that the officer could not see into the sack and pushed the sack quickly towards defendant Wright. At this point in time, the officer made no search; rather, he made a seizure, i.e., he grabbed the sack that was being pushed toward defendant Wright. Under the circumstances then existing, the officer did not know whether there was a knife, gun, or other weapon of some kind in the sack. It turned out to be marijuana and other drug paraphernalia. It only takes one furtive movement in an automobile to put an officer on the ground—dead.

Obviously, this was a warrantless seizure. As criminals or peddlers in narcotics use a mobile instrument such as the automobile to sell their wares and swiftly move about, and accompany themselves with weapons to accomplish their evil purposes, must our law enforcement officers be subjected to grave danger as they proceed to enforce the law? I think not. This officer acted instinctively to preserve his safety by grabbing the sack, the contents of which he knew not.

The United States Supreme Court has concluded that the diminished expectation of privacy surrounding the automobile is

due to subjection of its occupants to public view and to its use for transportation rather than for storing personal effects, and by its extensive regulation of government generally. *Robbins v. California*, 453 U.S. 420, 101 S.Ct. 2841, 2845, 69 L.Ed.2d 744 (1981); *Arkansas v. Sanders*, 442 U.S. 753, 761, 99 S.Ct. 2586, 2591–92, 61 L.Ed.2d 235, 243 (1979); *United States v. Chadwick*, 433 U.S. 1, 12–13, 97 S.Ct. 2476, 2484–85, 53 L.Ed.2d 538, 548–49 (1977); *Cardwell v. Lewis*, 417 U.S. 583, 590–91, 94 S.Ct. 2464, 2469–70, 41 L.Ed.2d 325, 334–35 (1974); *Cady v. Dombrowski*, 413 U.S. 433, 440–42, 93 S.Ct. 2523, 2527–28, 37 L.Ed.2d 706, 714–15 (1973). In *Katz v. United States*, 389 U.S. 347, 88 S.Ct. 507, 19 L.Ed.2d 576 (1967), a cornerstone was established; namely, that an individual's expectation of privacy is reduced in anything he voluntarily exposes to public view. Obviously, when the occupant of a car places items on the dashboard, seat, or floor, and these items are visible, they are no longer private. We do not have a case here of a locked or unlocked glove compartment, or a suitcase locked inside of an automobile trunk. These defendants had no reasonable expectation of privacy concerning the paper sack on the floor of this automobile. The sack was not even underneath the seat; it was partially open when the officer first saw it. Certainly, an individual may protect his privacy by taking precautions. When an occupant of an automobile places items out of sight, be they enclosed compartments or not, an occupant is taking precautions to protect his privacy. I see no attempt at privacy under this set of facts.

I join the majority and not the dissent because the dissent refuses to extrapolate and has a far too narrow approach regarding the law of search and seizure and the cases it cites. Further, the majority decision supports the concept that law enforcement officers, under circumstances such as outlined here, have a right to reasonably apprehend danger and seize what they believe to be dangerous objects or weapons to preserve their life. It was simply impractical for the officer to handle this situation by proceeding to get a search warrant.

FOSHEIM, Chief Justice (dissenting).

The majority holds that an arrest was not necessary, under *Terry, Adams* and *Mimms*, to justify the warrantless search of the automobile. *Terry, Adams* and *Mimms* are not authority for such a sweeping exception to the warrant requirement.

*Pennsylvania v. Mimms* did not involve an automobile search. Mimms was driving a car which a policeman stopped to issue a traffic summons for expired license plate. The policeman told Mimms to get out of the car and show him his driver's license. When Mimms got out the policeman observed a bulge in Mimms' sports jacket. The policeman, fearing a weapon, frisked Mimms, found a loaded gun and arrested him. Mimms was convicted of carrying a concealed firearm without a license. The first issue in *Mimms* was whether the order to get out of the car, issued after the driver was lawfully detained, was reasonable and thus permissible under the Fourth Amendment. The Supreme Court said yes because it reduced the risk of injury to the officer and was a *de minimis* intrusion on a driver's personal liberty. The second issue was whether the search of Mimms for weapons was permissible under the Fourth Amendment. The Supreme Court upheld the search based on *Terry v. Ohio.* Since the first issue raised in *Mimms* is not an issue in the case before us and the *Mimms* court did not consider whether the police officer could have extended his search for weapons into the car, *Mimms* does not support the majority's position. An extremely important fact in *Mimms*, absent from the case before us, is that Mimms was arrested. If the policeman had searched the car, such search undoubtedly would have been upheld as a search incident to the prior arrest, for this is what *Adams v. Williams* held.

In *Adams v. Williams* the validity of the search and seizure of items from an automobile was in question. A known informant told a policeman that a person seated in a nearby car was carrying narcotics and had a gun at his waist. The policeman approached the car and told the driver to

open the car door. Instead, the driver rolled down the window, whereupon the policeman immediately reached in and grabbed a gun from the driver's waistband. The driver was arrested for unlawful possession of a pistol. The policeman then searched the car and found heroin and other weapons. Defendant was convicted of illegal possession of a handgun and possession of heroin. The Supreme Court upheld the initial seizure of the handgun based on *Terry v. Ohio* and held that the warrantless search of the car was lawful as a search incident to arrest.

*Terry v. Ohio* did not involve an automobile search. Terry and his friend were standing on a street corner when they were first observed by a detective. The detective testified that he thought the two were acting suspiciously because each man in turn walked past a certain store and stared in the store window and then returned to the street corner to confer with the other. This happened a total of about 12 times. The detective testified that based on his 39 years of police experience he thought they were "casing a job, a stick-up" and his experience told him that if they were planning a stick-up that they were probably armed. The detective stopped the two and asked their names. When the response wasn't adequate he patted down their outer clothing, finding a gun in the outer coat pocket of each man. Terry and his friend were then arrested and were later convicted of carrying concealed weapons. The Supreme Court said the issue was "whether it is always unreasonable for a policeman to *seize a person and subject him to a limited search* for weapons unless there is probable cause for an arrest." 392 U.S. at 15, 88 S.Ct. at 1877 (emphasis added).

The issue in the case before us is not whether the police officer could order Luxum out of the car and take the knife away from him, it is whether finding a pocket knife on a suspected drunk driver justifies the warrantless search of the car for weapons the passengers in the car might have. *Terry v. Ohio* does not support the car search; its holding is very narrow, limited to the search of the person suspected of

criminal activity. In *Terry* it was acknowledged that there was not probable cause for an arrest. *Terry* states:

> We merely hold today that where a police officer observes unusual conduct which leads him reasonably to conclude in light of his experience that criminal activity may be afoot and that the persons with whom he is dealing may be armed and presently dangerous, where in the course of investigating this behavior he identifies himself as a policeman and makes reasonable inquiries, and where nothing in the initial stages of the encounter serves to dispel his reasonable fear for his own or others' safety, he is entitled for the protection of himself and others in the area to conduct a carefully limited search of the outer clothing of such persons in an attempt to discover weapons which might be used to assault him. Such a search is a reasonable search under the Fourth Amendment, and any weapons seized may properly be introduced in evidence against the person from whom they were taken.

The *Terry* court also said:

> Under our decision, courts still retain their traditional responsibility to guard against police conduct which is overbearing or harassing, or *which trenches upon personal security without the objective evidentiary justification* which the Constitution requires. (emphasis added)

392 U.S. at 30–31, 15, 88 S.Ct. at 1884–85, 1876. The majority not only fails to apply *Terry* prerequisites to the present facts (did the police officer observe the passengers acting unusually, leading him to reasonably conclude that they might be engaged in criminal activity and armed and presently dangerous, etc.) but also erroneously broadens the permissible scope of a Terry stop and frisk from the outer clothing of a person to the inside of a car. The Michigan Supreme Court recently reversed a lower court decision that had applied the stop-and-frisk principles of *Terry* to the search of a car interior. *Terry*, the majority said, "authorized a limited warrantless protective

search of the person during an investigatory stop. * * * The limited authority to search was emphasized by the [*Terry*] Court when it said '[t]he sole justification of the search * * * is the protection of the police officer and others nearby, and it must therefore be confined in scope to an intrusion reasonably designed to discover guns, knives, clubs, or other hidden instruments for the assault of the police officer.'" *People v. Long*, 413 Mich. 461, 320 N.W.2d 866, 869 (1982). The Michigan court stated that the officer's entry into the vehicle cannot be justified under the principles set forth in *Terry* which authorized only a limited patdown search of a *person* suspected of criminal activity, not the search of an area. This, of course, is in line with what the United States Supreme court said in *Ybarra v. Illinois*, 444 U.S. 85, 93–94, 100 S.Ct. 338, 343, 62 L.Ed.2d 238 (1979):

> The *Terry* case created an exception to the requirement of probable cause, an exception whose 'narrow scope' this Court 'has been careful to maintain.' ... Nothing in *Terry* can be understood to allow a generalized 'cursory search for weapons' or, indeed, any search whatever for anything but weapons. The 'narrow scope' of the *Terry* exception does not permit a frisk for weapons on less than reasonable belief or suspicion *directed at the person to be frisked* [.] (footnote omitted, emphasis added)

The conference opinion also cites *State v. Strickland* in support of its approval of the warrantless search of the car. But *Strickland* justified the warrantless search of the vehicle on recognized exceptions to the warrant requirement: search incident to arrest, the plain view doctrine, and the automobile exception. None of those exceptions, or any other recognized exception, are present in this case.

Under the Fourth Amendment of the United States Constitution and Art. VI, § 11 of the South Dakota Constitution a warrantless search and seizure is *per se* unreasonable unless it falls within one of the "jealously and carefully drawn,"[1] "strictly circumscribed"[2] exceptions to the warrant requirement. A heavy burden is on the State to prove such exception. *Arkansas v. Sanders*, 442 U.S. 753, 99 S.Ct. 2586, 61 L.Ed.2d 235 (1979). The State has offered no evidence to support its warrantless search of the automobile. The orders to suppress were therefore properly granted and should be affirmed.

I am hereby authorized to state that Justice DUNN joins in this dissent.

---

1. *Jones v. United States*, 357 U.S. 493, 499, 78 S.Ct. 1253, 1257, 2 L.Ed.2d 1514 (1958).

2. *Terry*, 392 U.S. at 26, 88 S.Ct. at 1882; *Mincey v. Arizona*, 437 U.S. 385, 393, 98 S.Ct. 2408, 2413–14, 57 L.Ed.2d 290 (1978).