THE PEOPLE OF THE STATE OF ILLINOIS, Plaintiff-Appellee, *v.*
COMMODORE TILDEN, Defendant-Appellant.

First District (5th Division)   No. 78-712

Opinion filed April 6, 1979.

Ralph Ruebner and Andrew Berman, both of State Appellate Defender's Office, of Chicago, for appellant.

Bernard Carey, State's Attorney, of Chicago (Lee T. Hettinger and Myra J. Brown, Assistant State's Attorneys, of counsel), for the People.

Mr. PRESIDING JUSTICE SULLIVAN delivered the opinion of the court:

After a jury trial, defendant was convicted of the felony offense of unlawful use of weapons and sentenced to three to nine years imprisonment. (Ill. Rev. Stat. 1977, ch. 38, par. 24—1(b).) On appeal, he contends that the trial court erred by denying (a) his motion to suppress evidence seized at the time of his arrest; and (b) his motion *in limine* to prevent the revelation of the nature of his prior felony conviction.

At approximately 1:45 to 2 a.m. on an October night, two uniformed policemen, while cruising in a marked squad car, received a radio

assignment concerning a suspicious man in a nearby alley and, upon their arrival there, they observed a man (later identified as defendant) walking toward an automobile parked in the middle of the alley. Officer Eichler testified that at this juncture he alighted from his vehicle and approached defendant, who then turned and began to walk away. Eichler asked him to return and produce his identification. Watching defendant search his pockets for his driver's license, Eichler observed a gun tucked into his waistband and shouted to his partner, "He's got a gun." In response, Officer Willer drew his weapon, and defendant was arrested and then searched. The gun was found to contain six live rounds of ammunition.

Defendant and his common-law wife, Margaret Brawner, testified that when he came home from work at 1:30 to 1:45 a.m. on the night in question, he left his car parked in the alley while he brought some food to the apartment; however, before leaving the apartment he clipped a holster to his belt. When Ms. Brawner asked him why he needed his weapon, he replied "I guess you [sic] right." Defendant testified that he then left the gun on a chest of drawers and returned to the alley unarmed while Ms. Brawner testified that she did not know whether or not he was carrying his gun when he left the apartment.

Defendant further testified that as he was approaching his car, he encountered two policemen—one of whom asked to see his driver's license. He complied, and when the license was returned Eichler patted him down and asked if he had any weapons. Although he denied having a weapon, he was handcuffed and taken back to his apartment where he obtained bail money in the amount of $30 from Ms. Brawner. Defendant also stated that when the police arrived in his apartment the gun was on the chest of drawers where he had left it, and that when he and Eichler were going down the steps after leaving the apartment, the latter asked him how much money he had and, when he answered that he was not going to pay anything, Officer Eichler said, "Regardless of what you say, I'm going to lie."

In 1960, defendant was convicted of murder and confined in a penitentiary until his release three years and 10 months prior to the occurrence in question. While ordinarily such evidence is necessary to prove the commission of the felony offense of unlawful use of weapons, defendant by a motion *in limine* before the jury selection sought to prevent disclosure of the nature of the prior conviction by offering to stipulate that within five years of the occurrence he had been released from the penitentiary following his conviction of an undesignated felony. The State refused to so stipulate, and the trial court denied the motion *in limine*. Thereafter, the indictment which identified the nature of the former felony as murder was read to the jurors, who were then instructed not to consider it as evidence against defendant. The State made no

reference to the conviction during *voir dire*, but defense counsel did ask several jurors whether defendant's prior murder conviction would affect their verdict.

During the presentation of its case, the State in its proof of the prior conviction did not disclose its nature. However, after defendant had taken the stand in his own defense, the prosecutor, in rebuttal, made the following statement:

> "MR. BURCH [prosecutor]: Judge, in rebuttal there will [*sic*] a stipulation. The stipulation or agreement is that on the 1st of September 1960, Mr. Commodore Tilden the defendant in this particular case was convicted in the Circuit [*sic*] of Cook County on the charge of murder.
>
> So stipulated?
>
> MR. ISAACSON [defense counsel]: So stipulated."

OPINION

Defendant first contends that the trial court erred by denying his motion to suppress evidence seized as the result of an illegal *Terry* stop. We disagree.

■■ The Illinois codification of the holding in *Terry v. Ohio* (1968), 392 U.S. 1, 20 L. Ed. 2d 889, 88 S. Ct. 1868, provides that:

> "A peace officer, after having identified himself as a peace officer, may stop any person in a public place for a reasonable period of time when the officer reasonably infers from the circumstances that the person is committing, is about to commit or has committed an offense * * * and may demand the name and address of the person and an explanation of his actions. Such detention and temporary questioning will be conducted in the vicinity of where the person was stopped." (Ill. Rev. Stat. 1977, ch. 38, par. 107—14.)

In order to constitute the restraint on the freedom to walk away, which is the essence of a seizure, there must be some element of force or of threatened force. (*People v. Hines* (1973), 12 Ill. App. 3d 582, 299 N.E.2d 581.) In this regard, it has been noted that:

> "The mere knowledge by the person questioned that the person asking the questions is a police officer cannot in itself constitute a factor of threatened force because, were that so, every question put to a person under any circumstances by a self-identified police officer on duty would by that very fact constitute a *Terry* stop. An officer may ask an individual a question provided he does not confine or restrain the individual without his consent. [Citations.]" *People v. Jordan* (1976), 43 Ill. App. 3d 660, 662-63, 357 N.E.2d 159, 162.

*People v. Ortiz* (1973), 18 Ill. App. 3d 431, 305 N.E.2d 418, involved facts strikingly similar to those in the case at bar. There, two officers observed defendant and a companion walking down a street. Knowing the companion to be a prior offender, the officers curbed their squad car and motioned both to approach. As they neared their car, it appears that the wind blew defendant's coat open and one of the officers observed the butt of a gun protruding from the belt of defendant, who was then arrested. Prior to trial, the court denied his motion to suppress the gun as the fruit of an illegal stop and, on appeal, he contended "that the action of the police officer in calling him to the car was an unreasonable stop * * * and that his motion to suppress should have been granted." (18 Ill. App. 3d 431, 433, 305 N.E.2d 418, 420.) In affirming the denial of the motion to suppress, we held that by calling upon defendant to approach, the police officers did not make a *Terry* stop, and that when the wind exposed the gun to the officer's vision probable cause to arrest existed.

■■ Here, without drawing his weapon, Officer Eichler asked defendant to approach and produce identification. The fact that the officer was in uniform does not of itself connote a threat of force (*Jordan*), and our review of the record reveals no further evidence that defendant's freedom to walk away was in any fashion overcome by force or threat of force. Under the circumstances, it cannot be said that the request to approach and produce identification constituted a *Terry* stop. (*Ortiz*; *Hines*.) As defendant, in voluntary compliance with such request, exposed the gun and holster to the officer's vision, probable cause to arrest and conduct a custodial search existed. In view thereof, we find no error in the denial of the motion to suppress.

Defendant next contends that he was denied a fair trial by the disclosure of the nature of his prior felony conviction, after he had offered to stipulate to the commission of a felony and his release within five years from the penitentiary.

■■ Illinois law provides an enhanced penalty for the felony offense of unlawful use of weapons where one has been convicted of a felony under the laws of this or any other jurisdiction, and within five years of his release from the penitentiary knowingly carries a pistol, revolver or other firearm concealed on his person except when on his land, abode or fixed place of business. (Ill. Rev. Stat. 1977, ch. 38, par. 24—1(a)(4) and (b).) To obtain a conviction under this provision, the State must allege and prove the accused's prior felony conviction. *People v. Edwards* (1976), 63 Ill. 2d 134, 345 N.E.2d 496; *People v. Ostrand* (1966), 35 Ill. 2d 520, 221 N.E.2d 499.

In the instant case, defendant does not dispute the admissibility of such evidence but argues that his offer *in limine* to stipulate that he was convicted of an undesignated felony and had been released from the

penitentiary within five years prior to the occurrence in question would satisfy the State's burden of proof and, thus, that the nature of the conviction would not only be irrelevant but would be prejudicial. During oral argument in this court, the State conceded that the statutory requirements imposing an enhanced penalty for the felony offense of unlawful use of weapons could be satisfied by an offer of the type made here; but, relying on *People v. Taylor* (1975), 31 Ill. App. 3d 20, 332 N.E.2d 735, it contends that it was not error to deny the motion *in limine* or, if it should be so considered, that it was harmless. We note, however, that Taylor does not support the State's position. There, the court rejected a constitutional challenge to the enhanced penalty provisions of section 24—1(b) and no motion was made to preclude disclosure of the nature of the prior offense.

■ Nevertheless, we do not believe that defendant was deprived of a fair trial by the denial of the motion *in limine* here, for the following reasons:

■■ First, we do not view the denial to be error. We feel the rule should be that where a defendant offers to stipulate in a comprehensive manner to a prior conviction of an undesignated felony and his release from the penitentiary within five years prior to the offense in question, so that the State's burden will be met without necessity of the production of a conviction statement, designation of the date of penitentiary release, or testimony identifying defendant as the person convicted and released, evidence of the nature of such conviction is irrelevant and therefore inadmissible. By his motion *in limine* here, defendant in effect sought to force an amendment of the indictment so that, when read to the jury, it would no longer disclose the nature of his prior conviction. However, a charging document, such as the indictment here, must include sufficient specificity to allow the accused to prepare a defense and protect him from being placed twice in jeopardy. (See *People v. Pujoue* (1975), 61 Ill. 2d 335, 335 N.E.2d 437.) Thus, we think that before such a motion is allowed, the offer to stipulate should include not only a statement as to the undesignated felony and penitentiary release but also that an indictment so amended is sufficient to allow the preparation of a defense and protect the accused from double jeopardy. This was not done here.

Second, the State's evidence revealed that three years and 10 months prior to the occurrence defendant had been released from the penitentiary following his conviction of an undesignated felony. The evidence which defendant sought to exclude, that is, proof that he had been convicted of murder, was not presented by the State. Thus, had defendant not chosen to testify, such evidence would not have been admissible in the State's rebuttal as it did not tend to expel, repel, counteract, or disprove the defense evidence. (*People v. Pelegri* (1968),

39 Ill. 2d 568, 237 N.E.2d 453; *People v. Gentry* (1974), 19 Ill. App. 3d 861, 312 N.E.2d 441.) Defendant did testify in his own behalf and, on this basis, the nature of the crime was admissible to the extent that it contended to affect his credibility as a witness. (*People v. Sanders* (1974), 56 Ill. 2d 241, 306 N.E.2d 865, *cert. denied* (1974), 417 U.S. 972, 41 L. Ed. 2d 1143, 94 S. Ct. 3178; *People v. Montgomery* (1971), 47 Ill. 2d 510, 268 N.E.2d 695.) In this regard, the jury here was instructed that such evidence should be considered only insofar as it might affect credibility and not as evidence of guilt.

Third, defendant stipulated to a statement of the prosecutor made in rebuttal that the prior conviction was for murder. This was the only reference to the nature of the prior conviction after the indictment had been read to the jury.

■■ Moreover, it appears to us that even if the more comprehensive offer to stipulate, as described above, had been made by defendant in his motion *in limine*, the reading of the indictment as originally drafted would not have been a denial of a fair trial. When evidence of guilt is overwhelming, errors even of constitutional magnitude are viewed as harmless where "if all error were expunged from the record a fair-minded jury could not return a verdict of acquittal." (*People v. Castillo* (1976), 40 Ill. App. 3d 413, 426, 352 N.E.2d 340, 352.) Here, two witnesses testified in a clear and convincing manner that defendant carried a loaded firearm partially concealed in the waistband of his trousers. Indeed, during oral argument here, defendant conceded the strength of the evidence against him and, from our review of the record as a whole, we believe it to be overwhelming. In view thereof and because, as stated above, the jury was instructed that the indictment did not constitute evidence of guilt, any error associated with the reading of the indictment as drafted was harmless.

For the reasons stated, the judgment appealed from is affirmed.

Affirmed.

LORENZ and WILSON, JJ., concur.