THE PEOPLE OF THE STATE OF ILLINOIS, Plaintiff-Appellee, *v.* STEVE SCHOEPKE *et al.*, Defendants-Appellants.

Second District No. 78-281

Opinion filed November 15, 1979.

Mary Robinson, of State Appellate Defender's Office, of Elgin, for appellants.

J. Michael Fitzsimmons, State's Attorney, of Wheaton (Robert L. Thompson, Assistant State's Attorney, of counsel), for the People.

Mr. JUSTICE SEIDENFELD delivered the opinion of the court:

Steve Schoepke and Robert Reinhardt were convicted in a consolidated bench trial of possession of more than 500 grams of cannabis. Reinhardt was sentenced to a term of probation for 3 years with 120 days to be served in the county jail; Schoepke was sentenced to a 3-year probation term with 90 days to be served in the county jail. They jointly appeal, contending that the trial court erred in denying their motions to suppress evidence.

Defendants were arrested on September 14, 1977, as the result of an incident which occurred in a parking lot adjoining the Northwestern station in Glen Ellyn at approximately 10 p.m. Lawrence Ryan, a Glen Ellyn policeman with 10 years experience, testified that he had been directed to spend the 4 to 12 o'clock shift in an unmarked van observing a small park near the station parking lot. He said that the assignment was made because of numerous problems in the area, resulting in some 25 arrests made in the two-week period prior to the time in question. He observed defendants as they arrived in a Fiat. He saw two of the passengers in the car exit and go into the park with a dog. Next, Schoepke got out and opened the trunk of the car. Within a short time a Camaro appeared and the defendants walked over to it and began talking to its occupants. Schoepke on the driver's side and Reinhardt on the other side. The officer noted that Schoepke was carrying a white plastic bag, "like a small plastic garbage bag," which swelled at the bottom. The bag appeared to be 8 inches in width and probably 10 inches in height. He believed it came out of the trunk of the vehicle because he hadn't seen it in Schoepke's hand when he went to the rear of the car the first time. After two or three minutes of conversation Reinhardt left in the Camaro and Schoepke walked back to his vehicle, still carrying the white bag. His trunk lid was still open.

At that time Ryan called Detective Velon telling him that there was a "situation down here worth checking out," which he thought might be a narcotics transaction. He testified:

"Just from previous experience I know that drugs are carried in plastic bags and sold in plastic bags."

When Velon appeared Schoepke was in the area of the trunk of the car

but Ryan could not observe what he was doing except that he noted that the trunk lid was up.

Robert Velon testified that he had been a detective for the Glen Ellyn police department for 9½ years. He said he pulled up in his vehicle at about 10:05 p.m., and saw Schoepke standing at the rear of his car with the trunk open. He identified himself as a police officer and asked Schoepke for identification but Schoepke said he did not have any. The witness asked Schoepke his name and was told, "Mike," but that he did not recall the last name he used. He said he was told that the vehicle belonged to Steve Schoepke but that defendant said he did not know where Schoepke was.

The officer testified that at the time he arrived he noticed that Schoepke was placing a white bag into the trunk and looking into the open trunk he saw a white plastic bag. In addition, he noticed back packs, a gym bag and miscellaneous clothes. He asked Schoepke what was in the white plastic bag and the answer was that it was dog food, to which Velon expressed disbelief. The witness testified that defendant Schoepke then said "go ahead and look." When Velon picked up the bag, which did contain dog food, he saw green plant material under it in the trunk, whereupon he arrested Schoepke for possession of cannabis. After the arrest he removed a back pack and found a container of cannabis with approximately 10 pounds, and a cannabis pipe. Reinhardt was later arrested when he returned to the lot because his identification was found in the back pack that was on top of the cannabis.

Officer Velon also testified that he had been assigned to the park for the purpose of surveillance for a two-week period before the 14th of September and that he had made approximately 25 arrests, eight of them being for unlawful possession of narcotics, one of the arrests on the 12th of September. He stated that there had not been a particular report of a crime on the night in question at that location.

Following the hearing in which Schoepke denied that he had consented to a search, the court entered the order appealed from which denied defendants' motions to suppress the items seized.

The issue in this case is a limited one. Defendants are not contesting Detective Velon's actions in lifting the plastic bag and discovering the cannabis, except insofar as these actions are the fruits of the alleged illegal stop. Defendants argue that the initial stop and questioning were unlawful and that all subsequent seizures, including defendant Reinhardt's arrest, were also illegal.

The issue raised tests the application of section 107—14 of the Illinois Code of Criminal Procedure (Ill. Rev. Stat. 1977, ch. 38, par. 107—14), which is a codification of the constitutional rule regarding investigatory stops first enunciated in *Terry v. Ohio* (1968), 392 U.S. 1, 20 L. Ed. 2d 889,

88 S. Ct. 1868. In *Terry*, the court held that to justify an official intrusion upon the constitutionally protected interests of the private citizen the officer "must be able to point to specific and articulable facts which, taken together with rational inferences from those facts, reasonably warrant that intrusion." (392 U.S. 1, 21, 20 L. Ed. 2d 889, 906, 88 S. Ct. 1868, 1880.) And the court further noted that in making that assessment "it is imperative that the facts be judged against an objective standard: would the facts available to the officer at the moment of the seizure or the search 'warrant a man of reasonable caution in the belief' that the action taken was appropriate?" (392 U.S. 1, 21-22, 20 L. Ed. 2d 889, 906, 88 S. Ct. 1868, 1880.) The standard requires less than probable cause but more than "inarticulate hunches." (392 U.S. 1, 22, 20 L. Ed. 2d 889, 906, 88 S. Ct. 1868, 1880. ) See also *Brown v. Texas* (1979), ___ U.S. ___, 61 L. Ed. 2d 357, 363, 99 S. Ct. 2637, 2641; *Dunaway v. New York* (1979), ___ U.S. ___, ___, 60 L. Ed. 2d 824, 835, 99 S. Ct. 2248, 2255.) "[A] seizure must be based on specific, objective facts indicating that society's legitimate interests require the seizure of the particular individual, or that the seizure must be carried out pursuant to a plan embodying explicit, neutral limitations on the conduct of individual officers." *Brown v. Texas* (1979), ___ U.S. ___, ___, 61 L. Ed. 2d 357, 362, 99 S. Ct. 2637, 2640.

The State argues that five interrelated factors gave the police ample reason to suspect that criminal activity was taking place: that the park was a high crime area, that Schoepke was carrying an opaque white plastic bag which from the officer's long previous experience was related to the carrying and sale of narcotics, that Schoepke's conversation with persons in the other car while holding the bag aided the inference that the contents were contraband, that Schoepke's car was parked in a "leased" spot, and finally that since an automobile search was involved the lower standard of reasonableness should be applied.

We completely reject any argument based on an automobile search and reliance upon *Chambers v. Maroney* (1970), 399 U.S. 42, 26 L. Ed. 2d 419, 90 S. Ct. 1975. Since defendants are contesting only the initial stop, cases based on automobile searches do not apply. Nor is there any substance to the State's assertion that Schoepke's car being illegally parked was another factor leading to reasonable suspicion of crime. In this record Officer Ryan did not mention in his testimony that the illegal parking was a basis for advising Detective Velon to check out the situation; and Detective Velon only mentioned the illegal parking when asked his reasons for having the car towed. These facts distinguish *People v. Crawford* (1978), 64 Ill. App. 3d 861, relied upon by the State.

We therefore address the remaining factors in determining whether the trial court correctly ruled on the basis of a *Terry* stop and pursuant to the Illinois statute.

We conclude that the specific reasonable inferences which the police officers were entitled to draw from the facts in the light of their experience justified the intrusion to stop and to make the threshold inquiries of Schoepke which led to the discovery of the contraband. The incidence of crime in the area is a characteristic of the area which the officers could consider as a factor. (*United States v. Brignoni-Ponce* (1975), 422 U.S. 873, 884-85, 45 L. Ed. 2d 607, 618, 95 S. Ct. 2574, 2582; *People v. McGowan* (1977), 69 Ill. 2d 73, 79.) Here, the police consistent with their duty to investigate criminal activities in the area had the locale under particular surveillance over a period of several weeks. Further, they were trained, experienced police officers who it could be said were able "to perceive and articulate meaning in given conduct which would be wholly innocent to the untrained observer. * * *" (*Brown v. Texas* (1979), ___ U.S. ___, ___ n.2, 61 L. Ed. 2d 357, 362 n.2, 99 S. Ct. 2637, 2641 n.2.) Schoepke had taken a small, apparently filled, plastic bag from his trunk, which the officer was able to articulate from his experience was often the type of container associated with drug traffic. This is a factor here even though, in itself, it does not justify an investigatory stop, nor, of course, give rise to probable cause. (Compare *People v. Gottenborg* (1976), 41 Ill. App. 3d 8, 10; *People v. Damon* (1975), 32 Ill. App. 3d 937, 938.) These facts which the officers were able to articulate as bearing on their decision, taken together with the apparent rendezvous with another car which arrived and kept its motor running while the defendants approached it and talked to the occupants with Schoepke holding the bag, made for a totality of articulable facts which could reasonably lead to a stop and a limited inquiry. We conclude that the balance between the individual's right of privacy and freedom from random police harassment and the public's interest in effective prevention of crime has been properly struck in favor of the State's position.

The judgment is affirmed.

Affirmed.

WOODWARD and NASH, JJ., concur.