THE PEOPLE OF THE STATE OF ILLINOIS, Plaintiff-Appellee, *v.* JAMES E. MILLS, Defendant-Appellant.

Second District   No. 81—911

Opinion filed June 8, 1983.

810

LINDBERG, J., dissenting.

G. Joseph Weller and John R. Wimmer, both of State Appellate Defender's Office, of Elgin, for appellant.

T. Jordan Gallagher, State's Attorney, of Sycamore (Phyllis J. Perko and Cynthia N. Schneider, both of State's Attorneys Appellate Service Commission, of counsel), for the People.

JUSTICE HOPF delivered the opinion of the court:

Defendant, James E. Mills, was charged by information with unlawful possession of more than 30 but less than 500 grams of a substance containing cannabis in violation of section 4(d) of the Cannabis Control Act (Ill. Rev. Stat. 1981, ch. 56½, par. 704(d)). Defendant's pretrial motion to suppress the seized material was denied. After a bench trial in De Kalb County defendant was found guilty and sentenced to 18 months' probation and a $250 fine.

On appeal defendant contends that his motion to suppress was improperly denied because the evidence seized was the fruit of an improper stop of defendant's vehicle. We agree and reverse and remand this cause.

At the suppression hearing defendant testified that he and a friend, David Milroy, were sitting and talking in defendant's car at the municipal parking lot in Sycamore. Officer Garvey then pulled in the parking lot. Milroy told defendant that Officer Garvey was behind them and defendant took his keys out of the glove compartment, put them in the ignition, started the car and turned around to back up when he saw that Officer Garvey had gotten out of his car. Garvey had parked his car about two spaces down and, according to defendant, the car was blocking the exit to the parking lot. Defendant put his car in park when he saw Officer Garvey get out of his car.

Defendant went on to say that the officer went to the driver's window and asked defendant what he was doing. Defendant replied that he was doing "nothing." Garvey asked both men to get out of the car, which they did. Garvey then searched the car. Defendant testified, on cross-examination, that he told Garvey not to make a search because it was his mother's car.

Officer Garvey testified that he pulled into the parking lot to avoid a busy intersection. After he pulled in the lot he saw that

defendant and Milroy were looking at him and they "made fast movements, leaning forward like they were leaning down towards the floorboard of the car." On cross-examination Officer Garvey testified that defendant's reaction to his entrance into the parking lot was what caused him to approach defendant's vehicle. Officer Garvey pulled his vehicle past defendant's, stopped it, and walked up to defendant's side of the car. The officer leaned over to ask them what they were doing and noticed both of the occupants were moving around and acting nervous. Then he noticed a clear plastic bag with a green leafy substance in it on the floorboard of the car. It appeared to be marijuana. After seeing this, he testified, he asked the boys to step out of the car. The officer testified that defendant told him to go ahead and search the car. In the car he found a jacket, the pockets of which contained two plastic bags full of a green leafy material. Garvey told defendant he could get a search warrant if he needed and defendant should cooperate by giving him the keys to the glove compartment. Defendant then unlocked the compartment and handed Garvey a brown paper bag, telling him it contained three ounces of grass.

After oral arguments, the trial court found that Officer Garvey had approached the defendant's vehicle in a public parking lot and had seen a plastic bag containing green material. It found Garvey had sufficient experience with marijuana to recognize it. The arrest of defendant and search of the vehicle were deemed to be proper.

■ It should be noted at the outset that defendant failed to file a post-trial motion in this cause. Generally, the failure to do this results in a waiver of the alleged error. (*People v. Pickett* (1973), 54 Ill. 2d 280, 296 N.E.2d 856.) However, certain errors can be considered under Supreme Court Rule 615(a) (87 Ill. 2d R. 615(a)), which provides for the "plain error doctrine." In addition, there are exceptions to this rule in criminal cases where the evidence is closely balanced. (*People v. Jackson* (1980), 89 Ill. App. 3d 461, 411 N.E.2d 893.) The State has not raised this issue on appeal and does not contend that defendant's arguments are waived. Even when a post-trial motion is lacking a court can consider constitutional arguments, such as presented here, on their merits. *People v. Baker* (1979), 78 Ill. App. 3d 411, 396 N.E.2d 1174; *People v. Smith* (1977), 53 Ill. App. 3d 395, 368 N.E.2d 561.

■ Turning to defendant's contention of error, the question presented is whether or not Officer Garvey made a proper "stop" or "seizure" of defendant in the parking lot. It is clear that an investigatory "stop" is proper if the officer can point to specific and articula-

ble facts which, taken together with rational inferences from those facts, reasonably warrant the intrusion. *Terry v. Ohio* (1968), 392 U.S. 1, 21, 20 L. Ed. 2d 889, 905, 88 S. Ct. 1868, 1879; Ill. Rev. Stat. 1979, ch. 38, par. 107—14.

As the court stated in *People v. DeLisle* (1982), 104 Ill. App. 3d 297, 299, 432 N.E.2d 954, 956:

> "There are no *per se* rules for determining whether an investigatory stop is justified. Each case must be decided on its own facts. *Coolidge v. New Hampshire* (1971), 403 U.S. 443, 509-10, 29 L. Ed. 2d 564, 608, 91 S. Ct. 2022, 2060; *People v. Kelly* (1979), 76 Ill. App. 3d 80, 84, 394 N.E.2d 739."

In the present case Officer Garvey's suspicion was founded on the fact that the defendant and his friend made fast movements and leaned forward. Garvey also testified that he recognized defendant, and that defendant looked at him when he pulled in the lot. Beyond this, Garvey articulated no facts to support his suspicion of defendant.

The State contends that the facts of this case do not constitute a "stop" as occurred in *Terry v. Ohio* (1968), 392 U.S. 1, 21, 20 L. Ed. 2d 889, 905, 88 S. Ct. 1868, 1879. In *Terry*, which prohibited an investigatory stop based on "inarticulate hunches," Officer McFadden stopped three defendants he suspected were contemplating a daylight robbery. The court noted that, in the interest of crime prevention, an officer can make a temporary seizure for investigation when he has observed unusual conduct which leads him to reasonably conclude in light of his experience that criminal activity may be afoot. More recently, the Supreme Court stated that a stop for investigation must be justified by some objective manifestation that the person stopped is, or is about to be, engaged in criminal activity. (*United States v. Cortez* (1981), 449 U.S. 411, 66 L. Ed. 2d 621, 101 S. Ct. 690; 3 W. LaFave, Search and Seizure sec. 9.2, at 2 n.11.1 (1983 Supp.).) Again, in the case at bar, the only objective manifestations raised by Officer Garvey were: Defendant's looking at Garvey, his rapid movement and leaning forward, and possibly the fact that Garvey knew defendant or defendant's reputation. Clearly Garvey was not investigating any criminal activity, nor was there any showing of a general criminal investigation.

In *People v. DeLisle* (1982), 104 Ill. App. 3d 297, 432 N.E.2d 954, the question of what constitutes a proper stop was addressed by the court. The defendant in *DeLisle* had been stopped at O'Hare Airport and drugs were found in her baggage. The court rejected the arresting officer's reasoning for making the stop, noting that many people could meet the characteristics argued to be indicative of criminal ac-

tivity, *i.e.*, nervousness, walking rapidly from the baggage area, arrival from a source city and possession of limited luggage.

In *People v. DeLisle* (1982), 104 Ill. App. 3d 297, 432 N.E.2d 954, as in the case at bar, the State relied on *United States v. Mendenhall* (1980), 446 U.S. 544, 64 L. Ed. 2d 497, 100 S. Ct. 1870, for the proposition that no stop or seizure occurred because defendant had no reason to believe she was not free to end the conversation and proceed on her way. The *DeLisle* court did not, and was not required to, accept this line of reasoning because only two justices proposed it in *Mendenhall*. Similarly, we do not believe defendant was free to drive or walk away in the case before us.

Illinois cases that discuss what constitutes a "stop" or "seizure" are as varied as those of the Supreme Court. In *People v. Schoepke* (1979), 77 Ill. App. 3d 1026, 397 N.E.2d 225, a police officer saw defendant take a small plastic garbage bag from the trunk of a car. Another detective was called in and drugs were found in the plastic bag. Addressing the issue of whether the stop was proper, this court emphasized that the totality of facts were to be considered, and that the appearance of the plastic bag alone was, in itself, not sufficient to justify an investigatory stop. (77 Ill. App. 3d 1026, 1030.) However, the combination of events that occurred made a totality of articulable facts which, the court found, justified the stop and inquiry. The facts that were shown in *Schoepke* included an ongoing investigation and surveillance of the area where the stop occurred, a showing of incidence of crime in the area and an apparent rendezvous of defendant's vehicle with another vehicle.

Focusing on the question of whether or not a "stop" occurred, it has been held that a stop, and therefore a seizure of a person under the fourth and fourteenth amendments (*People v. Roberts* (1981), 96 Ill. App. 3d 930, 933, 422 N.E.2d 154, 156), occurs the moment a person's freedom to walk away from a policeman is restrained, even though a restraint falls short of an arrest. (*People v. Kennedy* (1978), 66 Ill. App. 3d 267, 273, 383 N.E.2d 713, 718.) Restraint can be deduced from a showing of actual or threatened force on the part of the police officer. (*People v. Ortiz* (1973), 18 Ill. App. 3d 431, 305 N.E.2d 418.) It has also been held that, absent some restraint on a person's freedom to walk away from an officer, no *Terry*-type stop can be said to have occurred. (*People v. Tilden* (1979), 70 Ill. App. 3d 859, 863, 388 N.E.2d 1046.) In the case at bar, the showing of force question likely turns on whether defendant could have driven, rather than walked, away from Officer Garvey.

The State contends that no stop occurred in this case because Of-

ficer Garvey merely approached a stationary vehicle and addressed a single question to its occupants. It contends that the vehicle was not brought to a halt by a show of police authority. However, defendant testified that after he saw Garvey pull in the lot, he started his car and put it in reverse gear. Then he turned around to see if he was going to hit anything and saw that Officer Garvey had gotten out of his car. Defendant then put his car back in "park" and Officer Garvey came over. He also indicated that Garvey left his car about two spaces down, and that it blocked the exit to the lot. On the other hand, Garvey testified that his car did not block defendant's exit, but he conceded that defendant would have to drive around his car in order to exit the lot. Other than this, the officer did not contradict defendant's testimony.

Although defendant's vehicle was stationary, it is apparent that he intended to move his car but changed his mind upon Garvey approaching him, and possibly because Garvey's car at least partially blocked him. Regardless of whether defendant was in a car, it appears that he reasonably believed that he had better see what Garvey wanted. See *Illinois Migrant Council v. Pilliod* (N.D. Ill. 1975), 398 F. Supp. 882, where the court recognized that the average person feels obliged to stop and respond to police questioning.

■ While it is clear that an officer may stop an individual for temporary questioning, even without probable cause, both the case law in this area (*United States v. Cortez* (1981), 449 U.S. 411, 66 L. Ed. 2d 621, 101 S. Ct. 690) and the Code of Criminal Procedure of 1963 require that an officer be able to reasonably infer from the circumstances that the individual is committing, is about to commit, or has committed a criminal offense. Ill. Rev. Stat. 1981, ch. 38, par. 107—14; see also *People v. Smithers* (1980), 83 Ill. 2d 430, 434, 415 N.E.2d 327.

■ Here, the facts articulated by Officer Garvey included his observation that the defendant looked nervous. However, as previously mentioned, nervousness, at least in an airport, is not a characteristic that gives rise to a reasonable suspicion. (*People v. DeLisle* (1982), 104 Ill. App. 3d 297, 432 N.E.2d 954, 957.) Officer Garvey also testified that defendant made a rapid movement and leaned forward in the vehicle. In a case in which a police officer observed a defendant, sitting behind the steering wheel of his car, "slink down" into his seat, the court noted that the defendant's act of "slinking down" into his seat was not "such a furtive gesture as would support a finding of probable cause. It could just as easily be consistent with innocent actions, when the conduct of young men on a warm summer evening

is considered." (*People v. Gottenborg* (1976), 41 Ill. App. 3d 8, 10, 354 N.E.2d 30.) Although standards for probable cause are required for arrest and not for an investigatory stop, the leaning forward or slinking down behavior could still be an innocent act. It should also be noted that this was the crux of Garvey's suspicion.

Considering the totality of circumstances presented in this case, we believe that Officer Garvey did not have sufficient facts at the time of the encounter to create a reasonable suspicion that the defendant was involved in a possible crime.

The trial court's denial of defendant's motion to suppress is reversed. The defendant's conviction is reversed and this cause is remanded for a new trial.

Reversed and remanded.

UNVERZAGT, J., concurs.

JUSTICE LINDBERG, dissenting:
Upon consideration of the State's petition for rehearing, defendant's response and the State's reply, I now agree with the State's position. I dissent from the majority's adherence to the original disposition. I would affirm the trial court's denial of defendant's motion to suppress and defendant's conviction.

I believe it is unworkable and gives rise to inconsistent results to decide issues arising from police-citizen contacts from the perspective of the subjective reaction of the citizen. Rather, we should examine the officer's conduct to determine the existence of a fourth amendment violation. In the first instance that examination should be concerned with whether there was a "stop" or a "seizure" of the citizen's person. See *Terry v. Ohio* (1968), 392 U.S. 1, 20 L. Ed. 2d 889, 88 S. Ct. 1868.

In the case at bar we need go no further. The only evidence that suggests a "stop" or "seizure" by reason of Officer Garvey's approach to the car and inquiry of defendant is defendant's testimony of his subjective reaction. Defendant testified to the effect that he had intended to leave but for the approach of Officer Garvey. It appears that the trial court either chose to disbelieve defendant or, perhaps, concluded that defendant's subjective reaction was irrelevant, as it denied the motion to suppress the evidence.

I believe we should consider Professor LaFave's criticism of the subjective-reaction or perception-of-the-suspect test. His comment in part is:

"Thus, if the ultimate issue is perceived as being whether the suspect 'would feel free to walk away,' then virtually all police-citizen encounters must in fact be deemed to involve a Fourth Amendment seizure.

The fact that such would be the result may, standing alone, be enough to warrant the conclusion that a perception-of-the-suspect test is undesirable.

* * *

Asking the officer to determine whether the suspect feels free to leave, however, 'would require a prescience neither the police nor anyone else possesses.' " 3 W. LaFave, Search and Seizure sec. 9.2, at 50-51 (1978).

I would adhere to those cases which found no stop or seizure of the person for fourth amendment purposes where the officer simply approached the occupied vehicle cited by Professor LaFave. (3 W. LaFave, Search and Seizure sec. 9.2, at 18 (1983 Supp.).) Since the trial court's implicit finding that the officer's vehicle did not block the parking lot exit was not against the manifest weight of the evidence, we must accept it. *People v. Kincy* (1982), 106 Ill. App. 3d 250.

Since I conclude there was no stop prior to the officer's view of the contraband, it is not necessary to discuss the law and circumstances under which an officer may properly make a stop or seizure. See *United States v. Cortez* (1981), 449 U.S. 411, 66 L. Ed. 2d 621, 101 S. Ct. 690; Ill. Rev. Stat. 1981, ch. 38, par. 107—14.