STATE of Missouri, Appellant,

v.

**Emille Darnell SHANNON, Respondent.**

**No. WD 45501.**

Missouri Court of Appeals,
Western District.

June 2, 1992.

Motion for Rehearing and/or Transfer to
Supreme Court Denied
July 28, 1992.

Application to Transfer Denied
Sept. 22, 1992.

Richard G. Callahan, Pros. Atty., Mark A. Richardson, Asst. Pros. Atty., Jefferson City, for appellant.

Lorri McCoy, Jefferson City, for respondent.

Before LOWENSTEIN, C.J., and BERREY and HANNA, JJ.

BERREY, Judge.

The State files this interlocutory appeal from an adverse ruling by the circuit court sustaining defendant's motion to suppress evidence, to wit: cocaine seized from respondent's person during execution of a search warrant. We reverse the ruling.

Pursuant to the issuance of a search warrant, Jefferson City police went to 208 Pine Street, Apartment B, in Jefferson City and executed the warrant. Detective Dampf had received information from informants that drugs were being sold out of this apartment. These informants, while closely monitored by Dampf, purchased what appeared to be crack cocaine from inside Apartment B, 208 Pine Street. The informants advised Dampf the crack cocaine was being sold by black males, that they were using pagers to facilitate the drug sales, and they carried the crack cocaine in "Tylenol" bottles. Based on this information, Dampf signed an affidavit and applied for a search warrant, which was issued. The issuance of the search warrant has not been contested.

On entering the premises, Dampf and several other officers found six or seven occupants present in the apartment. Respondent was seated on a couch just inside the front door in the living room. Dampf ordered respondent to the floor, handcuffed him and then performed a pat-down search. Dampf felt an object near the left pocket area of the jacket respondent was wearing and was not sure what the object was. When he removed the object, he found a "Tylenol" bottle and a pager with money inside the pager clip. Dampf opened the bottle and observed what he believed to be crack cocaine. Dampf then formally advised respondent that he was under arrest.

Defendant moved to suppress as evidence at trial the "Tylenol" bottle and its contents, alleged to be cocaine. The trial court granted the motion stating that the search of defendant was improper because the officer did not have a reasonable belief the defendant was armed or dangerous and that, even if the initial patdown search was proper, the subsequent seizure and search of the "Tylenol" bottle was improper.

For its sole point on appeal the State alleges the trial court erred in its pretrial order suppressing evidence of cocaine seized from respondent. The trial court found the search warrant was validly issued on probable cause. The warrant itself is not under attack in the instant case.

On appeal, this court must consider the facts and reasonable inferences arising therefrom favorably to the order. *State v. Hutchinson*, 796 S.W.2d 100, 104 (Mo.App. 1990). "Only if the trial court's judgment is clearly erroneous will an appellate court reverse." *Id.* The Fourth Amendment to the United States Constitution, applicable to the states through the Fourteenth Amendment, provides in relevant part: "The right of the people to be secure in their persons, houses, papers, and effects against unreasonable searches and seizures, shall not be violated...." United States Constitution Amend. IV. The United States Supreme Court has stated, however, that this does not require a warrant to specify the "persons" to be searched. As that Court has noted in the context of electronic surveillance, "'[t]he Fourth Amendment requires a warrant to describe

only "the place to be searched, and the persons or things to be seized," not the persons from whom things will be seized.'" *United States v. Kahn*, 415 U.S. 143, 155 n. 15, 94 S.Ct. 977, 984 n. 15, 39 L.Ed.2d 225 (quoting *United States v. Fiorella*, 468 F.2d 688, 691 (2d Cir.1972)).

 The state alleges that the issuance of the search warrant carries with it the implied authority to search persons found on the premises. The respondent counters this argument by citing *Ybarra v. Illinois*, 444 U.S. 85, 100 S.Ct. 338, 62 L.Ed.2d 238 (1979). In *Ybarra*, however, officers executed a search warrant of a tavern, a public place, and, in the course thereof, searched patrons of the establishment. The court noted there was no reason to believe the authorities had probable cause to suspect any person found on the premises of the tavern of violating the law, except "Greg," who was named in the warrant. *Id.* at 90, 100 S.Ct. at 342. The search warrant did not grant the officer the authority to invade the constitutionally protected rights of the patrons. There was no reasonable belief the patrons were involved in any criminal activity or were armed or dangerous. *Id.* at 91, 100 S.Ct. at 342. In the case at bar, there was every reason to believe the occupants were involved in criminal activity and were armed and dangerous. The information being acted upon was that drugs were being sold from the residence by several persons. The sale of drugs often involves armed violence. It is well recognized that "the execution of a warrant for narcotics is the kind of transaction that may give rise to sudden violence." *Michigan v. Summers*, 452 U.S. 692, 702, 101 S.Ct. 2587, 2594, 69 L.Ed.2d 340 (1981).

*Terry v. Ohio*, 392 U.S. 1, 88 S.Ct. 1868, 20 L.Ed.2d 889 (1968), is somewhat instructive. *Terry* concerned a confrontation on the street between a citizen and a policeman investigating suspicious circumstances. *Id.* at 4, 88 S.Ct. at 1871. *Terry* held that an officer may conduct a warrantless pat-down search for his own protection if he reasonably believes a person he has accosted is armed. However, the situation must be conducive to this belief, i.e., dark night, high crime area, and the officer approached a person he believed to be in possession of drugs and armed. *Ybarra*, 444 U.S. at 92, 100 S.Ct. at 342 (citing *Adams v. Williams*, 407 U.S. 143, 146, 92 S.Ct. 1921, 1923, 32 L.Ed.2d 612 (1979)).

> The "narrow scope" of the *Terry* exception does not permit a frisk for weapons on *less than reasonable belief or suspicion* directed at the person to be frisked, even though that person happens to be on premises where an authorized narcotics search is taking place.

*Ybarra*, 444 U.S. at 94, 100 S.Ct. at 343 (emphasis added).

It must be remembered, however, that *Terry* involved a warrantless search. In the instant case, a search warrant was being executed at a private dwelling, not a public bar, from which the police had probable cause to believe the occupants of the residence were selling drugs. A private dwelling was also the subject of a search warrant in *Summers*, 452 U.S. at 692, 101 S.Ct. at 2587. The Court held the search warrant, based on probable cause, implicitly carried with it a limited right to detain those occupants found at the premises. The Court further held that because it was lawful to require an occupant to re-enter the premises and remain until evidence "establishing probable cause to arrest him was found, his arrest and search incident thereto were constitutionally permissible." *Id.* at 705, 101 S.Ct. at 2596. The facts in *Summers* and the facts in the instant case are quite similar. In *Summers*, the respondent was not formally arrested until after the search was completed.

The interests of crime prevention and the officers' safety support the instant search and seizure. The pat-down for weapons was more than justified in the instant action. "Police may ... take appropriate action to ensure their own protection while carrying out a search warrant." *United States v. Patterson*, 885 F.2d 483 (8th Cir. 1989). The specific articulable facts of the situation together with rational inferences to be drawn from facts already known, warrant an investigatory search. *Id.* at

484. Such seizures, as in the instant case, are justified if the police have an articulable basis for suspecting criminal activity. *Summers*, 452 U.S. at 699, 101 S.Ct. at 2592. In the case at bar, the officers were executing a search warrant for drugs in a private residence from which drug sales had been made.

The defendant alleges that the search was improper because the warrant did not specify that he was to be searched. By definition, a search warrant is an anticipatory authorization. The police, while providing sufficient information to confine the search, must have enough flexibility to react to whatever situation they confront upon entering the premises being searched. To hold otherwise would often allow a person to frustrate the search by keeping the contraband in his pocket.

The search of Shannon was incident to warrant. Safety of the officers and any others who might be present require that the police be allowed to conduct pat-down searches of those on the premises when executing search warrants for drugs. The fact that the defendant, a black male, was present at the residence where drugs were being sold and that he had a pager and a "Tylenol" bottle in his possession constitute "articulable facts" to warrant the investigatory search.

The search of Shannon was lawful as was the search of the bottle found in his possession. The judgment of the trial court was clearly erroneous and, therefore, the decision is reversed and the cause is remanded to the trial court for appropriate action.

All concur.