1998 SD 115

**STATE of South Dakota, Plaintiff and Appellee,**

v.

**Karen D. ASHBROOK, Defendant and Appellant.**

**No. 20407.**

Supreme Court of South Dakota.

Considered on Briefs Sept. 17, 1998.

Decided Dec. 2, 1998.

Amundson, J., filed a dissenting opinion, in which Sabers, J., joined.

Mark Barnett, Attorney General, Paul Cremer, Assistant Attorney General, Pierre, South Dakota for plaintiff and appellee.

Joseph M. Kosel, Northern Hills Public Defender's Office, Deadwood, South Dakota for defendant and appellant.

KONENKAMP, Justice.

[¶ 1.] In this case, we must decide whether a passenger's furtive movements in an automobile stopped for a possible traffic violation, justify an officer's protective sweep for weapons around the passenger's seat. Because the officer observed the passenger repeatedly reach under and around her seat during a traffic stop, we conclude the search was lawful. We affirm the circuit court's denial of the motion to suppress illegal drugs found in the vehicle.

### Facts

[¶ 2.] On August 3, 1997, Karen Ashbrook was driving her van on I–90 with two passengers en route to Sturgis, South Dakota. Highway Patrol Officer Curt Fiechtner's attention was drawn to the van when he saw its hazard lights flashing and its slow movement compared to other traffic. It veered from side to side in its lane and at times onto the shoulder. Fiechtner also noticed a small plastic animal hanging from the right front visor, in violation of SDCL 32–15–6 (prohibit-

ing dangling objects obstructing driver's vision). *See State v. Ramirez,* 535 N.W.2d 847, 848 (S.D.1995). Based on these observations, Fiechtner turned on his emergency lights to pull the car over. He then saw the front seat passenger "immediately began reaching around her seat area. She reached under the seat. She reached between the driver's seat and the passenger's seat."

[¶ 3.] After they stopped alongside the road, Fiechtner exited his patrol vehicle and approached the van on the right side. At his request, Ashbrook produced her driver's license. It was expired. Fiechtner then asked the passenger about the movements he observed. The passenger told him she was moving her purse. Fiechtner inquired whether the three had any weapons. Ashbrook admitted she had a pocket knife. The officer later testified that he feared for his safety because he believed the movements he observed could have been an attempt to conceal or retrieve weapons. Based on this concern, he had the passenger get out so that he could search for weapons under her seat. Ashbrook and the other passenger remained in the van.

[¶ 4.] Under the passenger's seat, Fiechtner saw a stack of pouches. The top one was multi-colored, approximately five by four inches. The second pouch was black, approximately eight by four inches and an inch-and-one-half thick. As Fiechtner concluded that the black pouch was large and heavy enough to contain a weapon, he opened it and discovered drug paraphernalia and a substance resembling marijuana. He then had all the occupants get out and he searched the entire vehicle. He found a metal tin inside Ashbrook's purse which appeared to contain psilocybin mushrooms and, inside one of her bags, a canister with apparent marijuana residue. Later testing confirmed his suspicions.

[¶ 5.] Ashbrook was charged with possession of a controlled substance, possession of marijuana, possession of drug paraphernalia, and driving without a license. She moved to suppress the evidence obtained in the search of the van. The motion was denied. At her court trial on March 26, 1998, she was found guilty of possession of marijuana, possession of a controlled substance and possession of drug paraphernalia, but not guilty of driving without a license. She received a two year suspended penitentiary sentence. On appeal, Ashbrook questions whether the supposed furtive movement of her passenger created a sufficient, articulable reason to justify a warrantless search.

## Standard of Review

▪▪ [¶ 6.] We review the circuit court's grant or denial of a motion to suppress under the abuse of discretion standard. *State v. Tilton,* 1997 SD 28, ¶ 8, 561 N.W.2d 660, 662 (citations omitted); *Ramirez,* 535 N.W.2d at 848 (citation omitted); *State v. Smith,* 477 N.W.2d 27, 31 (S.D.1991) (citation omitted); *State v. Zachodni,* 466 N.W.2d 624, 630 (S.D. 1991). In this setting, factual findings on the actions of law enforcement officers are reviewed under the clearly erroneous standard. *State v. Anderson,* 1996 SD 59, ¶ 8, 548 N.W.2d 40, 42 (citations omitted). Whether an officer had a lawful basis to conduct a warrantless search is reviewed de novo as a question of law. *State v. Krebs,* 504 N.W.2d 580, 585 (S.D.1993) (citation omitted). Of course, by definition, a decision based on an error of law is an abuse of discretion. *Cooter & Gell v. Hartmarx Corp.,* 496 U.S. 384, 405, 110 S.Ct. 2447, 2461, 110 L.Ed.2d 359 (1990)(superseded by rule on other grounds).

## Analysis and Decision

▪▪ [¶ 7.] The Fourth Amendment of the United States Constitution and Article VI, § 11 of the South Dakota Constitution protect an individual's right to be free from unreasonable searches and seizures. In actuality, the Fourth Amendment "protects people, not places." *Katz v. United States,* 389 U.S. 347, 351, 88 S.Ct. 507, 511, 19 L.Ed.2d 576 (1967). Included in this protection is the requirement that searches be supported by warrants based on probable cause. US Const amend IV; SD Const art VI, § 11. Warrantless searches, therefore, are per se unreasonable, aside from a few, settled exceptions. US Const amend IV; SD Const art VI, § 11; *see also Katz,* 389 U.S. at 357, 88 S.Ct. at 514.

▪▪ [¶ 8.] To analyze whether law enforcement action was reasonable under the

Fourth Amendment, we use a balancing approach. We must evaluate the government interest at stake: in this case, the need for police to thwart crime by stopping suspicious persons and, when warranted by a reasonable belief that a person may be armed, to search the individual for weapons. *Terry v. Ohio,* 392 U.S. 1, 9–11, 88 S.Ct. 1868, 1873–75, 20 L.Ed.2d 889 (1968); *see United States v. Brignoni–Ponce,* 422 U.S. 873, 878, 95 S.Ct. 2574, 2578–79, 45 L.Ed.2d 607 (1975). That interest is measured against the individual's right to be free from unwarranted government intrusion into personal freedom and liberty. *Terry,* 392 U.S. at 11–12, 88 S.Ct. at 1874–75; *see Brignoni–Ponce,* 422 U.S. at 878, 95 S.Ct. at 2578–79. Determining whether a search or seizure is unreasonable is most effectively accomplished by looking to the "reasonableness in all the circumstances of the particular governmental invasion of a citizen's personal security." *Terry,* 392 U.S. at 19, 88 S.Ct. at 1878–79. The key to this inquiry is deciding whether the law enforcement action was justified at its onset, and whether the action was "reasonably related in scope to the circumstances which justified the interference in the first place." *Id.* at 19–20, 88 S.Ct. at 1879.

[¶ 9.] The initial question in deciding whether law enforcement action was reasonable is to ascertain if there was sufficient governmental interest to permit the intrusion upon the constitutionally protected rights of a citizen. *Id.* at 20–21, 88 S.Ct. at 1879 (citation omitted). To justify the intrusion, a law enforcement officer must "point to specific and articulable facts which, taken together with rational inferences from those facts, reasonably warrant that intrusion." *Id.* at 21, 88 S.Ct. at 1880 (footnote omitted). The circumstances must be examined under an objective standard: Would the facts observable to the law enforcement officer at the time of the search entitle an officer of reasonable caution to believe the action taken was appropriate? *Terry,* 392 U.S. at 21–22, 88 S.Ct. at 1880 (citations omitted). Simple good faith is not enough; the officer must possess an objectively reasonable belief. *Id.* at 22, 88 S.Ct. at 1880 (citation omitted). *But see Illinois v. Krull,* 480 U.S. 340, 107 S.Ct. 1160, 94 L.Ed.2d 364 (1987)(good faith reliance on statute requiring search).

[¶ 10.] An important general interest which may justify a warrantless search is crime prevention and detection. *Terry,* 392 U.S. at 22, 88 S.Ct. at 1880. *See generally Roberson v. State,* 54 Ark.App. 230, 925 S.W.2d 820, 823 (Ark.Ct.App.1996)(en banc)(general interest of the state is effective crime prevention and detection); *State v. Shannon,* 835 S.W.2d 406, 408–09 (Mo.Ct. App.1992), *reh'g/transfer to Supreme Court denied* (July 28, 1992), *transfer denied,* (Sept. 22, 1992)(crime prevention and officer safety supported pat down of defendant during execution of search warrant); *State v. Claussen,* 522 N.W.2d 196, 198 (S.D.1994)(per curiam)(at roadblocks, "a requirement of individualized suspicion defeats the public's interest in apprehending suspects who commit serious crimes"). Law enforcement officers possess authority "in appropriate circumstances and in an appropriate manner," to stop individuals to investigate possible criminal behavior, even though no probable cause to arrest exists. *Terry,* 392 U.S. at 22, 88 S.Ct. at 1880.

[¶ 11.] The safety of an investigating officer is a vital concern meriting certain intrusions. *Michigan v. Long,* 463 U.S. 1032, 1049, 103 S.Ct. 3469, 3480–81, 77 L.Ed.2d 1201 (1983)(holding that the protection of police and other individuals warrants protective searches); *Adams v. Williams,* 407 U.S. 143, 146, 92 S.Ct. 1921, 1923, 32 L.Ed.2d 612 (1972) (citation omitted)(officer may conduct limited protective search for weapons when the officer believes suspect is armed and dangerous); *Terry,* 392 U.S. at 23, 88 S.Ct. at 1881. *See generally Maryland v. Wilson,* 519 U.S. 408, ——, 117 S.Ct. 882, 885, 137 L.Ed.2d 41 (1997)("On the public interest side of the balance, the same weighty interest in officer safety is present regardless of whether the occupant of the stopped car is a driver or passenger."); *United States v. Patterson,* 885 F.2d 483, 484–85 (8thCir.1989)("Police may ... take appropriate action to ensure their own protection while carrying out a search warrant."); *Tilton,* 1997 SD 28, ¶¶ 18–21, 561 N.W.2d at 665–66 (sheriff could search defen-

dant when sheriff reasonably believed defendant may have been carrying a weapon). Law enforcement officers should be able to protect themselves and others from armed suspects. *Terry*, 392 U.S. at 24, 88 S.Ct. at 1881. Officers, however, must observe conduct that would lead "reasonably prudent" persons to believe their safety or others' safety could be compromised. *Id.* at 27, 88 S.Ct. at 1883.

▬▬ [¶ 12.] On the other hand, the court must also consider the "nature and quality of the intrusion" on an individual's constitutional rights. *Id.* at 24, 88 S.Ct. at 1881. The search must only include what is "minimally necessary to learn whether [a person is] armed." *Id.* at 30, 88 S.Ct. at 1884. Any search arising from a stop must be "strictly tied to and justified by the exigencies which excused the warrantless search," and, therefore, must be limited to a search necessary for the identification of weapons that could be used against the officer or others. *Warden v. Hayden*, 387 U.S. 294, 310–11, 87 S.Ct. 1642, 1652, 18 L.Ed.2d 782 (1967)(Fortas, J., concurring).

▬▬ [¶ 13.] Considering these factors, Officer Fiechtner's actions were reasonable. First, he made a legitimate traffic stop. Ashbrook's van was weaving and she was driving with her hazard lights flashing. In addition, Fiechtner noticed an object dangling from her visor. *See Ramirez*, 535 N.W.2d at 848 (object or gadget dangling between view of driver and windshield prohibited by South Dakota law). Even without the dangling object, Fiechtner had reasonable cause to stop the van. Thus the stop was legitimate at its inception. Further, when he activated his flashing lights, Fiechtner observed furtive movements: the passenger leaning down and reaching behind and under the passenger seat. These actions caused Fiechtner concern for his safety. Based on his experience and training, he believed the passenger could be either hiding or retrieving a weapon. For his own protection, Fiechtner searched immediately around the passenger's seat, specifically in the area where he saw the passenger reaching. His search revealed a container of a size, weight and shape sufficient to hold a weapon. He opened the container to see whether weapons were, in fact, present. Fiechtner then discovered the marijuana and drug paraphernalia. Although "protective sweep" searches must be examined closely on a case by case basis and may never be used as a pretext to search for reasons other than safety, we agree that the passenger's furtive movements could cause a reasonable officer to suspect the passenger was concealing or retrieving a weapon. We conclude, then, that a legitimate and important government interest justified the search of the area and container under the passenger's seat.

▬▬ [¶ 14.] Next, we decide whether the government intrusion, Fiechtner's search of the pouch, exceeded the scope of the justification for the warrantless search. We conclude it did not. Fiechtner's safety justified a search of the immediate area the passenger occupied. He did not search any other part of the van until he found the marijuana and drug paraphernalia, thereafter acquiring probable cause for a full search. Fiechtner did not open the pouch on the top of the stack that he concluded would be too small to contain a weapon; he only searched the pouch that was large enough and heavy enough to hold a weapon. At its inception, the warrantless search was most certainly limited to the area and container necessary to ascertain whether the passenger had concealed a weapon. As the van had already been legitimately stopped, the passenger would have had to wait until Fiechtner had completed his transactions with Ashbrook in any event. *Claussen*, 522 N.W.2d at 198 (citation omitted). The only change in the passenger's condition during the stop was that she had to wait outside, rather than inside, the van. *See Wilson*, 519 U.S. at ——, 117 S.Ct. at 886.

[¶ 15.] Other courts have addressed this issue and have decided likewise—furtive movement can justify a protective sweep. *See generally United States v. Evans*, 994 F.2d 317, 321 (7thCir.1993), *cert. denied*, 510 U.S. 927, 114 S.Ct. 335, 126 L.Ed.2d 280 (1993)(when officers reasonably interpreted the defendant's actions as an attempt to conceal a weapon, a protective search was justified); *United States v. Nash*, 876 F.2d 1359,

1361 (7thCir.1989), *cert. denied,* 493 U.S. 1084, 110 S.Ct. 1145, 107 L.Ed.2d 1049 (1990)(defendant's furtive gesture of raising himself up from the car seat and reaching toward the floor warranted vehicle search); *Sutton v. State,* 698 So.2d 1321, 1323 (Fla.Dist.Ct.App.1997)(Florida allows frisks of individuals after officers notice suspicious bulges in clothing or furtive movements by passengers in cars); *State v. Munoz,* 385 N.W.2d 373, 376–77 (Minn.App.1986)(defendant's action of leaning toward the passenger side of the vehicle before exiting the car was a furtive movement justifying search).

[¶ 16.] South Dakota has allowed the search of a vehicle for weapons after an officer discovered a weapon on the person of a traffic stop detainee. *State v. Luxem,* 324 N.W.2d 273 (S.D.1982). The United States Supreme Court has also upheld the removal of passengers from vehicles during routine traffic stops. *Wilson,* 519 U.S. at ——, 117 S.Ct. at 886. The Court noted that the danger to officers is greater when there are passengers in a stopped car. *Id.* "It only takes one furtive movement in an automobile to put an officer on the ground—dead." *Luxem,* 324 N.W.2d at 276 (Henderson, J., concurring).

[¶ 17.] Officer protection will not justify any and every search. Only the most legitimate of safety concerns will support this type of warrantless "protective sweep." Because we find that a legitimate and important government interest prompted the warrantless search, and that the initial search did not exceed what was minimally necessary to find whether the passenger's area of the van contained concealed weapons, the trial court did not err in denying the motion to suppress.

[¶ 18.] Affirmed.

[¶ 19.] MILLER, Chief Justice, and GILBERTSON, Justice, concur.

[¶ 20.] AMUNDSON and SABERS, Justices, dissent.

AMUNDSON, Justice (dissenting).

[¶ 21.] I respectfully dissent. A person certainly has a lesser expectation of privacy in their automobile than in their home, but Fourth Amendment protections are not forfeited merely due to the fact that you are stopped in your vehicle. *California v. Carney,* 471 U.S. 386, 105 S.Ct. 2066, 85 L.Ed.2d 406 (1985).

[¶ 22.] In a case involving furtive gestures or movements, the Utah Supreme Court stated in *State v. Schlosser,* 774 P.2d 1132, 1137 (Utah 1989), as follows:

> An investigative detention is justified if a police officer has a reasonable and articulable suspicion that the automobile's occupants are "involved in criminal activity." *United States v. Hensley,* 469 U.S. 221, 226, 105 S.Ct. 675, 679, 83 L.Ed.2d 604 (1985); *State v. Dorsey,* 731 P.2d 1085, 1087, 1090 (Utah 1986). Additionally, an officer may search a vehicle for weapons if he has a reasonable belief that the suspect is dangerous and "may gain immediate control of weapons." *Michigan v. Long,* 463 U.S. 1032, 1049, 103 S.Ct. 3469, 3481, 77 L.Ed.2d 1201 (1983). In such instances, "due weight must be given, not to [the officer's] inchoate and unparticularized suspicion or 'hunch,' but to the specific reasonable inferences which he is entitled to draw from the facts in light of his experience." *Terry v. Ohio,* 392 U.S. 1, 27, 88 S.Ct. 1868, 1883, 20 L.Ed.2d 889 (1968).

The New Jersey Supreme Court, also in a case involving furtive movements or gestures, stated the following:

> Finally, in *Michigan v. Long,* 463 U.S. 1032, 103 S.Ct. 3469, 77 L.Ed.2d 1201 (1983), the Court upheld the right of police to conduct a weapons search of the interior of a car when they have a reasonable belief that the motorist is potentially dangerous. In upholding the search, Justice O'Connor's opinion for the Court explained that a search of the passenger compartment of an automobile is "permissible if the police officer possesses a reasonable belief based on 'specific and articulable facts which, taken together with rational inferences from those facts, reasonably warrant' the officer in believing that the suspect is dangerous and the suspect may gain immediate control of weapons." *Id.* at 1049, 103 S.Ct. at 3480, 77 L.Ed.2d at 1220 (quoting *Terry v.*

*Ohio,* 392 U.S. at 21, 88 S.Ct. at 1879, 20 L.Ed.2d at 906).

We may summarize the essence of these protective principles again in the words of Chief Justice Hughes:

"Our evaluation of the proper balance that has to be struck * * * leads us to conclude that there must be a narrowly drawn authority to permit a reasonable search for weapons for the protection of the police officer, where he has reason to believe that he is dealing with an armed and dangerous individual, regardless of whether he has probable cause to arrest the individual for a crime. The officer need not be absolutely certain that the individual is armed; the issue is whether a reasonably prudent man in the circumstances would be warranted in the belief that his safety or that of others was in danger." * * *

Accepting these rules as representing bedrock constitutional law, it remains to apply them to the factual base [of the case]. [*State ex rel. H.B.,* 75 N.J. 243, 248, 381 A.2d 759, 761 (1977) (quoting *Terry,* 392 U.S. at 27, 88 S.Ct. at 1883, 20 L.Ed.2d at 909).]

*State v. Lund,* 119 N.J. 35, 573 A.2d 1376, 1379 (N.J.1990) (alteration in original).

[¶ 23.] An objective review is required to discern whether or not an articulable suspicion existed to warrant such an intrusion. Furtive movements or gestures by themselves are not sufficient justification for a search. *Lund,* 573 A.2d at 1383; *Schlosser,* 774 P.2d at 1137. *See also Spence v. State,* 525 So.2d 442 (FlaApp5 Dist 1988) (leaning down as if putting something on floorboard did not justify officer's suspicion of criminal activity); *People v. Mills,* 115 Ill.App.3d 809, 71 Ill.Dec. 247, 450 N.E.2d 935 (Ill.App. 2 Dist. 1983) (defendant's moving fast and leaning forward as officer approached did not create reasonable suspicion justifying a stop); *People v. Superior Court of Yolo County,* 3 Cal.3d 807, 91 Cal.Rptr. 729, 478 P.2d 449 (1970) (passenger's action of putting her arm over the back seat, then facing forward, and bending down toward floor, then resuming normal position did not support probable cause to search).

[¶ 24.] Turning to the record, it is apparent from Officer Fiechtner's testimony the reason for the search:

Q: Why did you inform her that you were going to search that area for weapons.

A: Because of movement that I had seen.

The trial court stated in its findings of fact:

The driver of the vehicle was identified as the Defendant Karen Ashbrook. She was asked about the "furtive movements" and stated that her passenger was reaching for her purse. Trooper Fiechtner did not know the Defendant, nor her two passengers and he reasonably believed, that based upon his experience and the "furtive movements" he had just observed, the occupants may well be armed with weapons and it was necessary for officer safety to search the front end of the vehicle.

Then the officer, when asked whether he conducted a *Terry* pat-down search, testified:

Q: Is there a reason that you did not do a pat-down search of her before asking her to stand in front of her van?

A: Yes.

Q: What is that reason?

A: I did not observe any type of a bulge on her person that would have conceivably been a weapon. And absent that, I'm very reluctant to pat down a female.

\*        \*        \*        \*        \*        \*

Q: Why did you not have the other two passengers in the vehicle step outside when you searched the vehicle for a concealed weapon?

A: My immediate area of concern was in that front seat area where I'd seen the furtive movement. The driver's hands were on the steering wheel or in her lap. I could easily watch her. And the rear seat passenger was sitting still with her hands in her lap.

Q: Were they all female?

A: Yes.

Q: Do you normally pat down females without a female officer or matron present?

A:  I very seldom pat down females. If there's a matron present, she'll do it. If I feel it's necessary, I'll generally have a second officer or do it right in front of the video camera.

[¶ 25.] In this case, we have three females on their way to the Sturgis Rally. Officer Fiechtner claims he was in fear for his safety, however, his own testimony belies any such claim. We have previously said a suspicion or hunch is not a basis to circumvent the Constitution, " 'in determining whether the officer acted reasonably in such circumstances, due weight must be given not to his inchoate and unparticularized suspicion or "hunch," but to the specific reasonable inferences which he is entitled to draw from the facts in light of his experience.'" *State v. Shearer*, 1996 SD 52, ¶ 20, 548 N.W.2d 792, 796 (quoting *Terry*, 392 U.S. at 27, 88 S.Ct. at 1883, 20 L.Ed.2d at 909). A review of the record shows that if an officer employs the buzzword "furtive movement" and refers to a generalized notion of safety, Fourth Amendment rights fly right out the back of the van. An objective review of this record does not support the trial court's conclusion there was a reasonable and articulable suspicion for a protective sweep. To hold otherwise establishes precedent that if one simply employs the proper terminology, the inquiry stops, and the Constitution is rendered effectively meaningless.

[¶ 26.] I am authorized to state that Justice SABERS joins in this dissent.