2023 IL App (1st) 221068-U

THIRD DIVISION
December 27, 2023

No. 1-22-1068

**NOTICE:** This order was filed under Supreme Court Rule 23 and is not precedent except in the limited circumstances allowed under Rule 23(e)(1).

_____

IN THE
APPELLATE COURT OF ILLINOIS
FIRST JUDICIAL DISTRICT

_____

| | | |
|---|---|---|
| THE PEOPLE OF THE STATE OF ILLINOIS, | ) | Appeal from the |
| | ) | Circuit Court of |
| Plaintiff-Appellee, | ) | Cook County |
| | ) | |
| v. | ) | No. 18 CR 16994 |
| | ) | |
| JODIE MADISON, | ) | Honorable |
| | ) | Domenica A. Stephenson, |
| Defendant-Appellant. | ) | Judge Presiding. |

_____

PRESIDING JUSTICE REYES delivered the judgment of the court.
Justices Lampkin and D.B. Walker concurred in the judgment.

**ORDER**

¶ 1   *Held*: Vacating one of defendant's criminal sexual assault convictions under the one-act, one-crime doctrine and otherwise affirming the judgment of the circuit court.

¶ 2   Jodie Madison was charged with aggravated kidnapping, aggravated criminal sexual assault, and falsely personating a peace officer in connection with an incident involving L.S. on the evening of September 5, 2018. L.S. testified at trial that defendant wore a uniform, a badge, and a firearm when he approached her on a Chicago street. Believing that defendant was a police officer with a weapon, L.S. complied with his instructions to walk with him to a nearby residence. L.S. testified that she was repeatedly sexually assaulted at the residence, whereas

defendant maintains they engaged in consensual sex. Defendant further asserts that he did not

impersonate a police officer and that his appearance was consistent with that of a security guard.

The jury found defendant guilty of aggravated kidnapping and two counts of criminal sexual

assault, and he was sentenced to three consecutive terms of 20 years in prison, resulting in an

aggregate sentence of 60 years.

¶ 3     Defendant advances multiple arguments in this direct appeal. He initially contends that

the State failed to prove beyond a reasonable doubt that he (a) committed an act of sexual

penetration by using the threat of force or (b) knowingly induced L.S. to go from one place to

another by deceit or enticement. Defendant also argues that the trial court erred in admitting

other-crimes evidence of a 2011 incident. He further claims that he was denied effective

assistance of counsel where his attorney failed to raise a hearsay objection to certain testimony of

a nurse who treated L.S. Finally, defendant contends one of his convictions for criminal sexual

assault should be vacated as it is a lesser-included offense of aggravated kidnapping in this case.

For the reasons discussed below, we vacate one of defendant's criminal sexual assault

convictions and otherwise affirm the judgment of the circuit court of Cook County.

¶ 4                              BACKGROUND

¶ 5     Defendant was indicted on 21 counts of aggravated kidnapping (720 ILCS 5/10-2(a)(3)

(West 2018)), aggravated criminal sexual assault (720 ILCS 5/11-1.30(a)(1), (a)(4), (a)(8)

(West 2018)), and false personation of a peace officer (720 ILCS 5/17-2(b)(4), (b)(5), (b)(6)

(West 2018)).

¶ 6                      *Motion to Allow Other-Crimes Evidence*

¶ 7     Prior to trial, the State filed a motion to allow other-crimes evidence which described

eight separate incidents involving defendant. The trial court entered an order granting the

motion in part and denying it in part; the order detailed which incidents could be introduced as other-crimes evidence and the purposes for which they could be introduced. Among other things, the trial court found that a 2011 altercation involving defendant and Warren Higginbothan – discussed further below – could be introduced for the purposes of intent, the absence of mistake, and the absence of an innocent frame of mind.

¶ 8                                                    *Trial Testimony*

¶ 9      The evidence presented during the jury trial included the following.

¶ 10                                                          L.S.

¶ 11     L.S. testified that after visiting her fiancé on the evening of September 5, 2018, she took the bus to Pulaski Road and Roosevelt Road in Chicago. She purchased cigarettes and then walked toward Jackson Boulevard to catch another bus. As she took a shortcut through a gas station, a passenger in a vehicle said something to her, but she "didn't really pay it no attention." Although she did not observe the passenger exit from the vehicle, she subsequently noticed him standing near her; L.S. identified him in court as defendant.

¶ 12     Defendant directed L.S. to "come here," and she responded "no." He then asked where she was going, and L.S. stated that she was going home. Defendant told L.S. that he had observed her a few times and that she was homeless, which she denied. According to L.S., defendant wore a jacket and stood with his hands on his hips. She noticed a silver star-shaped badge and a handgun in a holster on a belt around his waist.

¶ 13     Defendant told L.S. that she was going with him. L.S. testified that she complied, as she was afraid. The two walked through the alley less than one block to an apartment building. When they entered the property through a rear entrance, they encountered a dog, which defendant summoned by its name. Defendant informed L.S. that he lived in the building, and

the two proceeded downstairs to a basement apartment. Upon entering the basement apartment, L.S. stopped in the kitchen. He told her to "come on," and she responded "no" and indicated that she was going to stand there. L.S. testified "[defendant] said n'aw, he don't want me to steal anything," and he led her to a bedroom.

¶ 14    L.S. testified that defendant disrobed as she stood at the foot of the bed. When he removed his jacket, L.S. observed that he wore a white shirt which "looked like a police shirt" with the letters "LT" on it. She also viewed the handgun on the nightstand. Defendant directed L.S. to remove her clothes, and she complied. L.S. testified that he made her perform oral sex on him, and she told him that she "didn't like it." He then told her to "sit on his penis," and he vaginally penetrated her. She testified that she was "really, really scared" since the handgun on the nightstand faced her back. L.S. testified: "I told him I didn't like it and I got up." According to L.S., defendant made her lie down, told her to suck on his chest, and again inserted his penis into her vagina. After he ejaculated, she stood up and started to dress, but he told her "no." He made her enter the bathroom, where he wiped them both with a soapy towel.

¶ 15    As L.S. then got dressed, defendant told her "something about he got paid next week." He further stated that she "can go tell somebody" but that no one would believe her. L.S. testified that she did not know how to proceed, as she felt that the police would "cover up for him." Defendant then told L.S. to dial his phone number, and he directed her to input his name in her cellphone as "Lee." As she exited the apartment, she took her cellphone but purposely left behind a black drawstring bag as proof that she had been in the apartment.

¶ 16    Upon leaving the apartment building feeling "terrible, scared, afraid, [and] nasty," L.S. went to another location and procured cocaine and heroin. After getting high, she walked to her sister's residence in Oak Park, Illinois. L.S. relayed to her sister what had happened, and her

sister told her to call and tell defendant that she had left her bag at his home. Defendant answered her call and told her that he would put her bag in a plastic bag since it was raining and would leave the bag on the gate of his building. L.S.'s sister then directed her to go to West Suburban Medical Center (West Suburban), which was located across the street.

¶ 17 On cross-examination, L.S. testified that she did not cry for help as she walked through the alley with defendant, and she did not attempt to flee from the apartment. Although she thought his uniform and badge "looked like the Chicago police," she acknowledged that she did not observe the words "Chicago police" on those items. Defense counsel questioned L.S. regarding her statements to a police officer who interviewed her at West Suburban after the incident.[1] During that interview, she told the officer that she noticed defendant's badge as he stood in the alley, but she did not mention observing a weapon at that time. She later testified that she was high during the interview.

¶ 18 Defense counsel also questioned L.S. regarding defendant's comments at the apartment. L.S. testified that, after she dressed, defendant offered that he did not have money but that he would get paid the following week; he stated, "[y]ou come over." L.S. thought he was "crazy," as she would never return to the apartment. She confirmed that he did not give her any money. L.S. also testified that although she had been "clean and sober" for more than one year before that night, she knew where to obtain drugs.

¶ 19 When asked during redirect examination why she did not call 911 after leaving the apartment, she responded, "how I was [sic] going to call the police on the police." She testified that she did not run from defendant since she was scared as he had a firearm and could shoot her.

---

[1] An excerpt of the interview – as recorded on the officer's body-worn camera – was admitted as defendant's sole trial exhibit.

¶ 20                                         Latasha Lake

¶ 21    L.S.'s sister, Latasha Lake (Lake), testified that she formerly resided in an apartment in Oak Park.  In the early morning hours of September 6, 2018, she heard her doorbell buzzing. When Lake went to the building door, she found L.S.  According to Lake, L.S.'s hair was disheveled, and she appeared fearful.  L.S. fell to the ground and cried as they spoke.  Lake then directed L.S. to walk across the street to West Suburban.  Lake did not accompany her to the hospital, as Lake's 12-year-old daughter was asleep in the apartment.

¶ 22                                       Nurse Brook Barnas

¶ 23    Brook Barnas (Barnas) testified that she was formerly employed as an emergency room staff nurse at West Suburban.  She was certified as a sexual assault nurse examiner (SANE), *i.e.*, a nurse who provides care for a patient admitted to the emergency department with a complaint of sexual assault.  Without objection, Barnas was found qualified as an expert in the field of sexual assault examination and treatment.

¶ 24    On the morning of September 6, 2018, Barnas provided treatment to L.S., who consented to the administration of a criminal sexual assault kit.  Over defense counsel's objection, Barnas testified regarding L.S.'s recitation of what had happened with defendant.

¶ 25    Barnas then testified regarding L.S.'s answers to questions regarding the nature of the contact between her and defendant, as well as her actions after the contact with defendant, *e.g.*, whether she showered or changed clothes.  She also relayed L.S.'s responses to questions regarding her prior sexual activity with her fiancé.  Barnas testified that she performed an internal and external physical examination of L.S. and collected various samples.  Using a medical dye which illuminates breaks in the skin, she observed a tiny tear on L.S.'s vagina. L.S. was treated for pain and was prescribed prophylactic medication for possible sexually

transmitted diseases and pregnancy.

¶ 26                                    Sergeant Daniel McCall

¶ 27    Chicago Police Sergeant Daniel McCall testified that he worked on the investigation of the incident.  Based on information provided to the police, he drove to an alley in the 3900 block of West Grenshaw Street on September 6, 2018, and recovered a bag hanging from a fence.

¶ 28                                    Detective Brenna Scanlan

¶ 29    Detective Brenna Scanlan (Detective Scanlan) of the Chicago Police Department was also assigned to investigate the incident with L.S. on September 6, 2018.  When Detective Scanlan arrived at West Suburban, L.S. had already been questioned by a sergeant from the Internal Affairs Division, which investigates allegations of misconduct against police officers.

¶ 30    After interviewing L.S., Detective Scanlan drove to the vicinity of Roosevelt and Pulaski to look for cameras which may have captured the incident.  She was not able to locate any functioning cameras in the area.  When Detective Scanlan returned to her office, she learned about the recovery of the bag from a fence at a specific address on West Grenshaw Street.  Using the telephone number provided by L.S. and the address where the bag was located, Detective Scanlan was able to tie defendant to the incident.

¶ 31                                    Sergeant Seung Cho

¶ 32    Chicago Police Sergeant Seung Cho (Sergeant Cho) initially testified regarding the hierarchy of the Chicago police department.  He explained that a lieutenant serves in a supervisory capacity and that all supervisory personnel wear white, whereas lower-ranked patrol officers wear light blue.

¶ 33    At Detective Scanlan's request, Sergeant Cho administered a photo array to L.S. in a conference room at a police station on the morning of September 7, 2018.  L.S. immediately

identified a photograph of defendant as her assailant. During cross-examination, Sergeant Cho testified that L.S. declined to have the administration of the photo array audio or video recorded.

¶ 34                                     Officer Tyler Andrews

¶ 35    Chicago Police Officer Tyler Andrews (Officer Andrews) testified that on November 12, 2018, he was directed to pick up defendant, place him in custody, and transport him to the police station, where Officer Andrews performed a pat-down of defendant and recovered certain items.

¶ 36    Officer Andrews was questioned regarding a series of photographs which memorialized defendant's appearance on the date of his arrest. Defendant was 55 years old; his height was 6'1" and his weight was 220 pounds. Defendant wore an "officer sweater" with a silver star and badge number over his heart and a Chicago flag patch on the right sleeve. The name "Lt. Madison" was written in gold on the right side of the sweater. According to Officer Andrews, the word "Lieutenant" is not abbreviated as "Lt." on an official uniform. Under his sweater, defendant wore a white button-down shirt with his name, a gold star, and a flag patch on the right sleeve. During the pat-down of defendant at the station, Officer Andrews also recovered an empty handcuff case and two metal silver stars and their respective star holsters.

¶ 37                                     Forensic Testing Testimony

¶ 38    After an evidence technician employed by the Chicago Police Department testified regarding the chain of custody of the criminal sexual assault kit, a former forensic scientist for the Illinois State Police testified that a buccal swab collected from defendant was compared with vaginal swabs of L.S. Defendant could not be excluded as the major male individual contributor at the compared DNA locations; the testing revealed that no fewer than one in 1.6 octillion individuals would be included as a possible contributor.

¶ 39                                    Warren Higginbothan

¶ 40    Warren Higginbothan (Higginbothan) testified regarding an incident which occurred on the morning of July 16, 2011.  As he drove on a one-way street in Chicago, he encountered an unmarked "police car," *i.e.,* a vehicle which "the police sell off and then somebody buys it," traveling the wrong way down the street.  Higginbothan stopped his vehicle, and the other driver – whom Higginbothan identified in court as defendant – "jumped out" of his vehicle, used profanities, and stated "get out of my way," while holding a black handgun.  Defendant told Higginbothan, "I'm the police, motherf***" and that he was God, and he was going to send Higginbothan to heaven.  Higginbothan responded, in part, "you're not even a rent a cop."

¶ 41                                    Officer Steven Coleman

¶ 42    Chicago Police Officer Steven Coleman (Officer Coleman) was one of the officers who responded to the incident between defendant and Higginbothan.  Upon arresting defendant in a nearby building, Officer Coleman recovered various items which defendant admitted were his, including a bullet-proof vest inside a vest cover with a name attached to it, a duty belt, a handcuff key, and an empty gun box.  Officer Coleman subsequently learned that defendant was not a police officer.

¶ 43                *Closing Arguments, Verdict, Sentencing and Posttrial Matters*

¶ 44    After the State rested, the trial court denied defendant's motion for a directed verdict, and defendant did not testify or present other witnesses.

¶ 45    During closing arguments, defense counsel argued that L.S.'s statements to the police and the medical staff while at West Suburban were made while she was under the influence of drugs.  Counsel further noted that L.S. did not mention to one of the responding officers that defendant displayed a weapon when he approached her on the street.  Defense counsel also stated that the

words "Phenomenal Security" – and not "Chicago Police" – were on a badge recovered from defendant. According to counsel, defendant was wearing a security officer's uniform and never presented himself as a police officer. Counsel contended that the sexual activity between defendant and L.S. was consensual and arguably suggested that defendant had paid L.S.[2]

¶ 46    The jury found defendant guilty of aggravated kidnapping, false personation of a peace officer, and two counts of criminal sexual assault. The false personation conviction merged into the aggravated kidnapping count, and he was sentenced to three consecutive terms of 20 years' imprisonment for each of the three convictions, for an aggregate sentence of 60 years, plus mandatory supervised release. Defendant filed a motion for a new trial wherein he argued, in part, that the trial court erred in allowing the other-crimes testimony from Higginbothan and Officer Coleman. The trial court denied the motion, as well as defendant's subsequent motion to reconsider sentence. Defendant timely filed this direct appeal.

¶ 47                           ANALYSIS

¶ 48    Defendant advances five primary arguments on appeal. First, he seeks reversal of his criminal sexual assault convictions based on the State's failure to prove beyond a reasonable doubt that he committed an act of sexual penetration by threat of force. Second, he seeks reversal of his aggravated kidnapping conviction, arguing that the State failed to prove beyond a reasonable doubt that he knowingly induced L.S. from one place to another by deceit or enticement. Third, defendant maintains that the trial court erred in admitting other-crimes evidence of the 2011 incident with Higginbothan. Fourth, he asserts that he was denied effective assistance of counsel where his trial counsel failed to object to certain hearsay statements from

---

[2] Defense counsel argued: "[W]hen she went into the apartment, just before she had *** tried to buy loose cigarettes, 50 cents a pop. When she leaves out, Mr. Madison's house, she has money for crack, she has money for heroin[.]"

nurse Barnas. Finally, defendant contends that one of his criminal sexual assault convictions should be vacated, as it is a lesser included offense of aggravated kidnapping predicated on the same criminal sexual assault. The State challenges each of these contentions.

¶ 49                              *Criminal Sexual Assault Convictions*

¶ 50    As noted above, defendant contends that this Court should reverse his convictions for criminal sexual assault as the State failed to prove beyond a reasonable doubt that he committed an act of sexual penetration by using the threat of force. The State argues that his appearance, statements, and conduct vis-à-vis L.S. created the threat of force.

¶ 51    Defendant was originally charged with two counts of aggravated criminal sexual assault, which required the State to prove that he: (1) committed an act of sexual penetration; (2) used force or the threat of force to commit that act; and (3) was armed with a firearm. 720 ILCS 5/11-1.30(a)(8) (West 2018). The State alleged that defendant committed two separate acts of sexual penetration upon L.S. by the threat of force (*i.e.*, the two separate acts of vaginal intercourse), specifically by posing as a police officer in a uniform and by having a firearm. The jury also was instructed on the lesser-included offense of criminal sexual assault, which required the State to prove that defendant: (1) committed an act of sexual penetration; and (2) used or threatened force to commit the act. 720 ILCS 5/11-1.20(a)(1) (West 2018). The jury found defendant guilty of two counts of criminal sexual assault.

¶ 52    As defendant is challenging whether the evidence was sufficient to establish the elements of the offense of criminal sexual assault, he is challenging the sufficiency of the evidence at trial and the factual findings of the jury. *People v. Gonzalez*, 2019 IL App (1st) 152760, ¶ 33. The due process clause of the Fourteenth Amendment to the United States Constitution requires the State to prove every element of the charged offense beyond a reasonable doubt. U.S. Const.,

amend. XIV. See also *Jackson v. Virginia*, 443 U.S. 307, 318 (1979) (noting that the "critical inquiry on review of the sufficiency of the evidence to support a criminal conviction must not be simply to determine whether the jury was properly instructed, but to determine whether the record evidence could reasonably support a finding of guilt beyond a reasonable doubt"); *People v. Wheeler*, 226 Ill. 2d 92, 114 (2007) (same). When faced with a challenge to the sufficiency of the evidence, a reviewing court "asks whether, viewing the evidence in the light most favorable to the prosecution, any rational trier of fact could have found the essential elements of the offense beyond a reasonable doubt." *People v. Jones*, 2023 IL 127810, ¶ 28. We will not retry the defendant or substitute our judgment for that of the fact finder – in this case, the jury – regarding the weight of the evidence or the credibility of the witnesses. *Gonzalez*, 2019 IL App (1st) 152760, ¶ 35. As the reviewing court, we will set aside a conviction only where the evidence is so unsatisfactory or improbable that it creates a reasonable doubt of the defendant's guilt. *People v. Swenson*, 2020 IL 124688, ¶ 35.

¶ 53    Illinois law defines "force or threat of force" as including, but not limited to, situations where the accused (1) uses or threatens to use force or violence on the victim, and the victim under the circumstances reasonably believes that the accused has the ability to execute that threat; or (2) overcomes the victim by use of superior size or strength, physical restraint, or physical confinement. 720 ILCS 5/11-0.1 (West 2018). "Beyond the fact that the requisite force must be 'something more than the force inherent in the sexual penetration itself,' there is 'no definitive standard establishing the amount of force which the State is required to prove in order to prove criminal sexual assault, and each case must be considered on its own facts.' " *People v. Parker*, 2016 IL App (1st) 141597, ¶ 35 (quoting *People v. Alexander*, 2014 IL App (1st) 112207, ¶¶ 52, 54).

¶ 54    Citing *People v. Tilden*, 70 Ill. App. 3d 859 (1979), defendant argues that the jury found that the State failed to prove that he was armed with a firearm, and L.S.'s belief that he was a police officer was insufficient to demonstrate the threat of force. *Tilden*, however, is wholly inapposite. In that case, the appellate court considered whether the trial court erred by denying the defendant's motion to suppress evidence seized as the result of a stop by police. *Id.* at 860. The appellate court noted that the mere knowledge that the person asking questions is a police officer does not in itself constitute a factor of threatened force. *Id.* at 862. As the State herein accurately observes, the *Tilden* discussion of whether "threatened force" constitutes a seizure in violation of the Fourth Amendment simply has no applicability in this case.

¶ 55    While defendant refers to L.S.'s "misimpression" of his status as a police officer, we observe that the jury found defendant guilty of false personation of a peace officer, *i.e.*, that he knowingly and falsely represented himself to be a peace officer in attempting or committing a felony. 720 ILCS 5/17-2(b)(5) (West 2018). The false personation statute exists "to prevent the public from being deceived into believing an individual who represents himself to be a peace officer has the authority to act in an official capacity when no such authority exists." *People v. Thoennes*, 334 Ill. App. 3d 320, 326 (2002).

¶ 56    Furthermore, although we recognize that the jury did not find defendant guilty of *aggravated* criminal sexual assault, such determination does not diminish the impact of defendant's display of a handgun. As this court has previously observed, the use or threat of force does not occur solely at the time of sexual penetration. *People v. Smith*, 2019 IL App (1st) 161246, ¶ 29. "A threat of force precedes the sexual penetration by some amount of time; it lingers over the victim, who is subdued precisely because the victim has a reasonable belief that the accused has the ability to execute that threat of force." (Internal quotation marks omitted.)

*Id.* ¶ 31. In the instant case, although defendant may not have been armed with a firearm during the sexual acts, the fact that he revealed the weapon when he initially approached L.S. and that he later placed it on his nightstand made L.S. reasonably believe that defendant could use force or violence against her.

¶ 57 Viewing the evidence in the light most favorable to the State, we conclude that a rational trier of fact could have found the essential elements of the offense of criminal sexual assault beyond a reasonable doubt. Defendant, who was 6'1", approached L.S., who was walking alone on a street at night. She testified that he wore what appeared to be a police uniform, and he displayed a badge and a firearm. After directing her to "come here" – and her refusal – he informed L.S. that she was going with him. At his residence, she observed his white "police shirt" with the letters "Lt," seemingly referring to his rank as lieutenant. L.S. was then directed to engage in sexual acts, despite her repeated statements that she did not like the acts. During such acts, defendant's handgun was on the nearby nightstand. The foregoing circumstances facilitated her belief that defendant could exercise force with impunity.

¶ 58 Defendant also contends that since he raised a question of consent, the State had the burden of proof beyond a reasonable doubt on the issue of consent as well as the issue of force. *People v. Haywood*, 118 Ill. 2d 263, 274 (1987); *People v. Lamonica*, 2021 IL App (2d) 200136, ¶ 37. See also 720 ILCS 5/11-1.70 (West 2018) (providing, in part, that consent is a defense to criminal sexual assault where force or threat of force is an element of the offense). Even assuming *arguendo* that defendant presented sufficient evidence to support the defense of consent (see *Lamonica*, 2021 IL App (2d) 200136, ¶ 37), we conclude that a reasonable trier of fact could have found that the State "disprove[d] consent" (*People v. Mpulamasaka*, 2016 IL App (2d) 130703, ¶ 97) beyond a reasonable doubt for the various reasons discussed above,

coupled with L.S.'s timely and emotional outcry to her sister and her seeking and receiving prompt healthcare at the hospital. We turn to the next issue.

¶ 59                                   *Aggravated Kidnapping Conviction*

¶ 60     Defendant next contends that this Court should reverse his conviction for aggravated kidnapping where the State failed to prove beyond a reasonable doubt that he knowingly induced L.S. to go from one place to another by deceit or enticement. As discussed above, we must consider whether, viewing the evidence in the light most favorable to the State, any rational trier of fact could have found the essential elements of the offense of aggravated kidnapping beyond a reasonable doubt. See *Jones*, 2023 IL 127810, ¶ 28.

¶ 61     As relevant to this case, an individual commits the offense of kidnapping when he knowingly by deceit or enticement induces another to go from one place to another with intent secretly to confine that person against her will. 720 ILCS 5/10-1(a)(3) (West 2018). An individual commits the offense of aggravated kidnapping when he commits kidnapping and commits another felony upon his victim. 720 ILCS 5/10-2(a)(3) (West 2018). See *People v. Robinson*, 2016 IL App (1st) 130484, ¶ 27 (noting that "[k]idnapping is elevated to aggravated kidnapping when the defendant also commits another felony, such as aggravated criminal sexual assault, on the victim").

¶ 62     According to defendant, the State failed to prove beyond a reasonable doubt that he knowingly deceived L.S. to induce her to travel from the street to his residence. In support of this contention, he cites *Robinson*, 2016 IL App (1st) 130484, and *People v. Reeves*, 385 Ill. App. 3d 716 (2008). In *Robinson*, the defendant telephoned a female acquaintance around midnight and asked if she would " 'like to go out to eat and to the movies.' " *Robinson*, 2016 IL App (1st) 130484, ¶ 5. He instead took her to an abandoned house, where he sexually assaulted

her. *Id.* ¶¶ 7-9. The defendant in *Reeves* led the victim to believe he would drive her home, but he did not do so. *Reeves*, 385 Ill. App. 3d at 727.

¶ 63    Defendant maintains that, unlike the defendants in *Robinson* and *Reeves*, he made no promises or misrepresentations to L.S. and thus did not engage in deceit. Simply put, we reject this contention. Defendant's uniform, badge, and weapon created the impression that he was a police officer, as evidenced by his conviction for false personation of a peace officer. While falsely presenting himself as a police officer, he informed L.S. that she was coming with him, and then walked with her from the street to his residence – an unfamiliar place where presumably no one would see or hear her (see *Robinson*, 2016 IL App (1st) 130484, ¶ 33) – while carrying a handgun on his belt.

¶ 64    For the foregoing reasons, we find that a rational trier of fact could have found the essential elements of kidnapping beyond a reasonable doubt in this case. Furthermore, we have already rejected defendant's challenges to his convictions for criminal sexual assault. We therefore conclude that the evidence was neither so unsatisfactory nor improbable that it created a reasonable doubt of defendant's guilt as to the aggravated kidnapping charge. See *Swenson*, 2020 IL 124688, ¶ 35.

¶ 65                                    *Other-Crimes Evidence*

¶ 66    Defendant next contends that the trial court erred by admitting evidence of the 2011 incident involving Higginbothan, particularly where the jury was never informed that defendant was acquitted after a bench trial in that case. He further maintains that the evidence of the incident was not probative and was highly prejudicial, and the State improperly used the evidence for propensity purposes. As defendant preserved this issue, we apply harmless-error review. *People v. Thompson*, 238 Ill. 2d 598, 611 (2010). "The improper introduction of other

crimes evidence is harmless error where the defendant is neither prejudiced nor denied a fair trial due to its admission." *People v. Bochenek*, 2020 IL App (2d) 170545, ¶ 67.

¶ 67     Under Illinois common law, other-crimes evidence generally is inadmissible if offered only to demonstrate the defendant's propensity to commit the charged crime. *People v. Johnson*, 406 Ill. App. 3d 805, 808-09 (2010). Accord *People v. Lindgren*, 79 Ill. 2d 129, 137 (1980) (noting that "[e]vidence of collateral crimes, *i.e.*, crimes for which the defendant is not on trial, is inadmissible if relevant merely to establish the defendant's propensity to commit crimes"). "The concern is not that such evidence is lacking in probative value, but that it may overpersuade the jury, which might convict the accused because it believes he or she is a bad person." *People v. Pikes*, 2013 IL 115171, ¶ 16.

¶ 68     Evidence of other crimes is admissible if it is relevant for any purpose other than to demonstrate the defendant's propensity to commit crime. *Id.* ¶ 11. See also Ill. R. Evid. 404(b) (eff. Jan. 1, 2011). Other-crimes evidence is admissible to prove intent, identity, *modus operandi*, motive, absence of mistake, "and any material fact other than propensity that is relevant to the case." *People v. Donoho*, 204 Ill. 2d 159, 170 (2003).

¶ 69     "When the trial court finds some relevance in other-crimes evidence, it must then conduct a balancing test." *People v. Gwinn*, 366 Ill. App. 3d 501, 515 (2006). Even where relevant, such evidence should not be admitted if its probative value is substantially outweighed by its prejudicial effect. *Pikes*, 2013 IL 115171, ¶ 11. See also Ill. R. Evid. 403 (eff. Jan. 1, 2011) ("Although relevant, evidence may be excluded if its probative value is substantially outweighed by the danger of unfair prejudice, confusion of the issues, or misleading the jury, or by considerations of undue delay, waste of time, or needless presentation of cumulative evidence").

¶ 70     The determination is not whether the other-crimes evidence is prejudicial, as such

evidence is "unquestionably prejudicial to a defendant." *People v. Perez*, 2012 IL App (2d) 100865, ¶ 45. "[T]he concern is with prejudice which is undue or unfair, the type of prejudice that 'speaks to the capacity of some concededly relevant evidence to lure the factfinder into declaring guilt on a ground different from proof specific to the offense charged.' " *People v. Maya*, 2017 IL App (3d) 150079, ¶ 66 (quoting *Old Chief v. United States*, 519 U.S. 172, 180 (1997)).

¶ 71     If the trial court is satisfied that the other-crimes evidence is relevant to a material question unrelated to propensity, and the court then determines that the probative quality of the evidence outweighs the prejudice to the defendant, the evidence may be admitted. *People v. Clark*, 2015 IL App (1st) 131678, ¶ 28. The admissibility of evidence rests within the discretion of the trial court and will not be disturbed absent an abuse of that discretion. *Pikes*, 2013 IL 115171, ¶ 12. See also *People v. Dabbs*, 239 Ill. 2d 277, 284 (2010) (applying a "clear abuse of discretion" standard). An abuse of discretion will be found only where the court's ruling is arbitrary, fanciful, unreasonable, or where no reasonable person would take the view adopted by the court. *People v. Baez*, 241 Ill. 2d 44, 106 (2011). See also *People v. Smith*, 406 Ill. App. 3d 747, 751 (2010) (noting that a reviewing court owes some deference to the trial court's ability to assess the impact of the other-crimes evidence on the jury).

¶ 72     Defendant initially contends that the 2011 incident with Higginbothan had no probative value as it was too remote in time to the 2018 incident involving L.S. We reject this contention. While we recognize that other offenses which are close in time to the charged offense will have more probative value than those which are remote, "the admissibility of other-crimes evidence should not, and indeed cannot, be controlled solely by the number of years that have elapsed between the prior offense and the crime charged." *People v. Ilgen*, 145 Ill. 2d 353, 370 (1991).

*E.g.*, *Donoho*, 204 Ill. 2d at 184 (finding that a 12- to 15-year gap between offenses is insufficient in itself to compel a finding that the court abused its discretion in the admission of the other-crimes evidence).

¶ 73 We also find that the trial court was within its discretion when it determined that the probative value of the evidence regarding the Higginbothan incident was not substantially outweighed by the danger of unfair prejudice. Although the State filed a motion *in limine* to introduce evidence of eight other incidents involving defendant – and the trial court allowed the admission of half of those incidents – the State limited its testimony to solely the Higginbothan matter. The State's decision to restrict the amount of other-crimes evidence reduced the potential prejudicial effect of the evidence at defendant's trial. See *People v. Williams*, 2013 IL App (1st) 112583, ¶ 50.

¶ 74 Defendant further argues that the 2011 incident and the case at bar are dissimilar and that only a propensity inference linked the incidents. According to defendant, "the State wanted to persuade the jury that because [defendant] had said he was a police officer, carried a gun, and threatened someone in 2011, he must have done the same to L.S. in 2018." Defendant also maintains that "there were no similarities" between the incidents with Higginbothan and L.S. "other than [his] alleged possession of a firearm." We disagree with these assessments. The other-crimes evidence from the 2011 incident was received on the issue of defendant's intent, absence of mistake, and absence of an innocent frame of mind. The testimony from Higginbothan and Officer Coleman was relevant as to whether defendant accidentally or innocently displayed his badge and firearm when he directed L.S. to go with him and whether L.S. consented to the sexual acts. The general similarities between the incidents – including defendant's use of a weapon and the ostensible authority of law enforcement to further a criminal

offense – supported admissibility. *Donoho*, 204 Ill. 2d at 184; see also *People v. McKibbins*, 96 Ill. 2d 176, 185 (1983) (stating that when other-crimes evidence is offered to prove the absence of an innocent frame of mind or the presence of criminal intent "mere general areas of similarity will suffice").

¶ 75 For the foregoing reasons, we do not find that the trial court abused its discretion in the admission of the other-crimes evidence. Even assuming *arguendo* that such evidence was erroneously admitted, reversal would not be warranted, as the error was unlikely to have influenced the jury given the strong case against defendant – including the testimony of L.S. and her sister. See *Clark*, 2015 IL App (1st) 131678, ¶ 65. We also presume that the jury followed the court's instructions regarding the other-crimes evidence and did not consider such evidence for an improper purpose. *People v. Johnson*, 2020 IL App (1st) 162332, ¶ 61. See also *Bochenek*, 2020 IL App (2d) 170545, ¶ 67 (noting that a "jury instruction admonishing the jurors about the limited purpose for which they may use the other-crimes evidence substantially reduces the prejudicial effect of the admission of the challenged evidence").

¶ 76 Defendant further contends that his trial counsel failed to ensure that the jury learned of his acquittal of the charges relating to the 2011 encounter with Higginbothan. To determine whether defendant was denied the effective assistance of counsel, we apply the two-pronged test set forth in *Strickland v. Washington*, 466 U.S. 668, 687 (1984). "To prevail on such a claim, a criminal defendant must show both that (1) counsel's performance was deficient and (2) the deficient performance prejudiced defendant such that he was deprived of a fair trial." *People v. Brown*, 2023 IL 126852, ¶ 11.

¶ 77 While the failure to establish either *Strickland* prong precludes a finding of ineffective assistance of counsel (*People v. Cherry*, 2016 IL 118728, ¶ 24), we find that neither prong was

established in this case. As to the performance prong, the record suggests that the defense strategy was to not draw the jury's attention to the other-crimes testimony. For example, during the jury instructions conference, defense counsel objected to the jury being instructed on how to consider the other-crimes evidence, stating that "[i]t highlights evidence which we were trying to keep out of this case altogether, so we don't want this read to the jury." *E.g.*, *People v. Watson*, 2012 IL App (2d) 091328, ¶ 32 (observing that matters of trial strategy will not ordinarily support an ineffective assistance claim). As to the prejudice prong of *Strickland*, given the solid case against defendant – including the testimony of L.S. and her sister – he cannot prove that the jurors' knowledge of the acquittal in the 2011 incident would have changed the outcome of this trial, as discussed above. See *People v. Baldwin*, 2014 IL App (1st) 121725, ¶ 68.

¶ 78 For the foregoing reasons, we are not persuaded by defendant's challenges to the admission of other-crimes evidence regarding the 2011 incident and counsel's performance with respect thereto. We turn to the next issue.

¶ 79 *Nurse Barnas Testimony*

¶ 80 Defendant also contends that he was denied effective assistance of counsel where his trial counsel failed to properly object to hearsay statements from Brooke Barnas, a nurse who treated L.S. at West Suburban. As noted above, Barnas was a specially-trained sexual assault nurse examiner (SANE). She testified, in part, regarding the answers provided by L.S. to a series of standard questions in sexual assault cases. Among other things, the answers described L.S.'s assailant and detailed the events before, during, and after the assault.

¶ 81 Although defense counsel objected once during Barnas's testimony, defendant argues on appeal that his counsel (a) failed to object to all of the allegedly inadmissible statements and (b) did not preserve this issue in a posttrial motion. According to defendant, Barnas's testimony

recounting L.S.'s hearsay statements unfairly bolstered L.S.'s own testimony, and thus the admission of the statements denied defendant a fair trial.

¶ 82    "Hearsay is an out-of-court statement offered in court to prove the truth of the matter asserted." *People v. Williams*, 2022 IL 126918, ¶ 52.  The rule against hearsay generally prevents the introduction of hearsay evidence.  *People v. Spicer*, 379 Ill. App. 3d 441, 449 (2007).  Furthermore, "[t]he general rule is that prior consistent statements of a witness are inadmissible for the purpose of corroborating the witness' trial testimony, because they serve to unfairly enhance the credibility of the witness."  *People v. Donegan*, 2012 IL App (1st) 102325, ¶ 52.

¶ 83    The Code of Criminal Procedure of 1963 (Code) includes a hearsay exception for statements by victims of sex offenses to medical personnel, which is a codification of the common law.  Under section 115-13 of the Code, in the prosecution of certain sex offenses, "statements made by the victim to medical personnel for purposes of medical diagnosis or treatment including descriptions of the cause of symptom, pain or sensations, or the inception or general character of the cause or external source thereof insofar as reasonably pertinent to diagnosis or treatment shall be admitted as an exception to the hearsay rule."  725 ILCS 5/115-13 (West 2018).  The trial court is "vested with discretion" to determine whether a victim's statements to a medical professional fall within the medical diagnosis exception to the hearsay rule.  *Spicer*, 379 Ill. App. 3d at 450.

¶ 84    As noted above, we apply the *Strickland* test to determine whether defendant was denied the effective assistance of counsel, *i.e.*, defendant must demonstrate both that his counsel's performance was deficient and that the deficient performance prejudiced defendant such that he was deprived of a fair trial.  *Brown*, 2023 IL 126852, ¶ 11.  In this case, defendant has not shown

that his counsel's performance was deficient. Among other things, Barnas – who was found qualified as an expert in the field of sexual assault examination and treatment – testified that all of the questions and information gathered were for the purpose of treating L.S. Furthermore, "[w]e have previously observed that the plain language of section 115-13 'evinces a legislative intent to apply this provision broadly,' encompassing testimony from nurses, treating doctors, evaluating doctors, or any other medical professional that is reasonably pertinent to diagnosis or treatment where it provides details of the sexual act committed, 'including how, when, and where the act occurred.' " *People v. Freeman*, 404 Ill. App. 3d 978, 987 (2010) (quoting *People v. Roy*, 201 Ill. App. 3d 166, 178 (1990)). "[I]f we were to hold that an evidence collection purpose made statements from a sexual assault evaluation inadmissible, we would in effect obliterate the statute, which applies only in sexual assault cases." *Spicer*, 379 Ill. App. 3d at 451. See also *People v. Falaster*, 173 Ill. 2d 220, 229 (1996) (rejecting defendant's contention that the diagnostic purpose of a sexual assault examination would be incompatible with its investigatory function).

¶ 85    We also find that defendant cannot establish prejudice. "The fundamental reason for excluding hearsay is the lack of an opportunity to cross-examine the declarant." *People v. Jura*, 352 Ill. App. 3d 1080, 1085 (2004). Accord *People v. Robinson*, 73 Ill. 2d 192, 200 (1978) (stating that "[a]side from the unsworn and sometimes cumulative nature of hearsay evidence, its most objectionable feature, and the main rationale underlying its exclusion, is the opposing party's inability to test the real value of the testimony by exposing the source of the assertion to cross-examination"). In this case, however, L.S. was extensively cross-examined by the defense. We thus turn to the final issue.

¶ 86                                   *One Act, One Crime*

¶ 87    Defendant contends that one of his criminal sexual assault convictions should be vacated
as it is the lesser included offense of aggravated kidnapping predicated on a criminal sexual
assault.  He acknowledges that he failed to preserve this issue for appeal.  See *People v. Hillier*,
237 Ill. 2d 539, 544 (2010) (observing that "to preserve a claim of sentencing error, both a
contemporaneous objection and a written postsentencing motion raising the issue are required").
Defendant nevertheless maintains that we may review his claim under the doctrine of plain error,
which allows a reviewing court to consider unpreserved error when "(1) a clear or obvious error
occurs and the evidence is so closely balanced that the error alone threatened to tip the scales of
justice against the defendant, regardless of the seriousness of the error, or (2) a clear or obvious
error occurs and that error is so serious that it affected the fairness of the defendant's trial and
challenged the integrity of the judicial process, regardless of the closeness of the evidence."
*People v. Piatkowski*, 225 Ill. 2d 551, 565 (2007).  We agree with defendant that the second
prong of plain error applies to his challenge.  *E.g.*, *People v. Artis*, 232 Ill. 2d 156, 168 (2009).

¶ 88    The Illinois Supreme Court has held that when the State charges a defendant with
multiple offenses that arise from a series of incidental or closely related acts – and the offenses
are not, by definition, lesser included offenses – multiple convictions and sentences can be
entered.  *People v. King*, 66 Ill. 2d 551, 566 (1977).  This is known as the one-act, one-crime
doctrine.  *People v. Miller*, 238 Ill. 2d 161, 165 (2010).

¶ 89    The one-act, one-crime doctrine involves a two-step analysis.  First, the court must
determine whether the defendant's conduct involved a single act or multiple acts.  *Id.*  Multiple
convictions are improper if they are based on precisely the same physical act.  *Id.*  Second, if the
conduct involved multiple acts, the court must determine whether any of the offenses are lesser-

included offenses; if an offense is a lesser-included offense, then multiple convictions are improper. *Id.* Whether a violation of the one-act, one-crime rule has occurred is a question of law, which is subject to *de novo* review. *People v. Coats*, 2018 IL 121926, ¶ 12.

¶ 90 As discussed above, an individual commits the offense of kidnapping when he knowingly by deceit or enticement induces another to go from one place to another with intent secretly to confine that person against her will. 720 ILCS 5/10-1(a)(3) (West 2018). An individual commits the offense of aggravated kidnapping when he commits kidnapping and "inflicts great bodily harm, other than by the discharge of a firearm, or commits another felony upon his ***victim." 720 ILCS 5/10-2(a)(3) (West 2018). A person commits criminal sexual assault if that person commits an act of sexual penetration and uses force or threat of force. 720 ILCS 5/11-1.20(a)(1) (West 2018). In this case, the convictions were not based on a single act; the kidnapping and each of the sexual assaults constituted separate physical acts.

¶ 91 To determine whether one offense is a lesser-included offense of another, we employ the "abstract elements" approach. *People v. Reveles-Cordova*, 2020 IL 124797, ¶ 13. Under this approach, the court examines the statutory elements of the two offenses. *Id.* If all of the elements of the first offense are included within the second offense and the first offense contains no element not included in the second offense, then the first offense is deemed a lesser-included offense of the second. *Id.* "In other words, it must be impossible to commit the greater offense without necessarily committing the lesser offense." *Id.*

¶ 92 In applying the abstract elements approach, we look only to the specific statutory subsection under which defendant was charged and convicted, not to the entire statutory provision governing the offense. *Id.* ¶¶ 18-21. Defendant was charged and convicted of aggravated kidnapping (count 5) which alleged, in part, that "he, by deceit or enticement,

induced L.S. to go from one place to another with the intent to secretly confine L.S. against her will, and [defendant] committed another felony upon L.S., to wit: criminal sexual assault." Given that all the elements of criminal sexual assault are inherently elements of aggravated kidnapping in this case, one of the criminal sexual assault convictions is a lesser-included offense.

¶ 93    When a defendant is convicted in violation of the one-act, one-crime rule, the conviction for the less serious offense must be vacated. *People v. Johnson*, 237 Ill. 2d 81, 97 (2010). Aggravated kidnapping is a Class X felony with a sentencing range of 6 to 30 years. 730 ILCS 5/5-4.5-20 (West 2018). Criminal sexual assault generally is a Class 1 felony with a sentencing range of 4 to 15 years.[3] 730 ILCS 5/5-4.5-30 (West 2018). Criminal sexual assault is thus the less serious offense.

¶ 94    We note that defendant received the same sentence of 20 years for each of his two criminal sexual assault convictions – counts 17 and 18 – and the record does not appear to elucidate which of the assaults constituted the offense referenced in the aggravated kidnapping charge. In the interest of judicial economy, we choose the "second" act of sexual penetration as the lesser included offense, and we thus vacate defendant's conviction and sentence on count 18.

¶ 95                              CONCLUSION

¶ 96    For the reasons discussed above, defendant's conviction and sentence on count 18 is vacated, and the remainder of the judgment of the circuit court of Cook County is affirmed.

¶ 97    Affirmed in part; vacated in part.

---

[3] We note that defendant's criminal history resulted in mandatory Class X sentencing as to his criminal sexual assault convictions. See 730 ILCS 5/5-4.5-95(b) (West 2018).